LAWYERS FOR CLEAN WATER, INC.
Drevet Hunt (Bar No. 240487)
        Email: drev@lawyersforcleanwater.com
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone:  (415) 440-6520
Facsimile:  (415) 440-4155

*Attorneys for Plaintiff*
LOS ANGELES WATERKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation, <br><br> Plaintiff, <br><br> vs. <br><br> A AND A METAL RECYCLING, INC., a California corporation; SINDY CARDONA, an individual; <br><br> Defendants. | Civil Case No. <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES** <br><br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

Complaint

Los Angeles Waterkeeper ("Waterkeeper" or "Plaintiff"), by and through its counsel, hereby alleges:

## I. JURISDICTION AND VENUE

1. This is a civil suit brought under the citizen suit enforcement provision of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). *See* 33 U.S.C. § 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2. On 9 March 2015, Waterkeeper issued a sixty (60) day notice of intent to sue ("Notice Letter") to A and A Metal Recycling, Inc., also known as KSI Metals, and Sindy Cardona (collectively "Defendants"). The Notice Letter informed the Defendants of their violations of the California General Permit for Discharges of Storm Water Associated with Industrial Activities (*National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ*) (hereinafter "Storm Water Permit") and the Clean Water Act. The Notice Letter also informed Defendants of Waterkeeper's intent to file suit against them to enforce the Storm Water Permit and the Clean Water Act.

3. The Notice Letter was sent to the registered agents for Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), and the Executive Officer of the Regional Water Quality Control Board, Los Angeles Region ("Regional Board"), as required by 40 C.F.R. § 135.2(a)(1). The Notice Letter is attached hereto as Exhibit A and is incorporated herein by reference.

4. More than sixty (60) days have passed since the Notice Letter was served on Defendants and the state and federal agencies. Plaintiff is informed and believes, and

1   thereon alleges, that neither the EPA nor the State of California has commenced or is

2   diligently prosecuting an action to redress the violations alleged in this Complaint. *See* 33

3   U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty

4   under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

5       5.   Venue is proper in the Central District of California pursuant to Section

6   505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the sources of the

7   violations are located within this judicial district.

8       6.   Defendants' violations of the procedural and substantive requirements of the

9   Storm Water Permit and the Clean Water Act alleged in this Complaint are ongoing and

10  continuous.

11  **II.    INTRODUCTION**

12      7.   This Complaint seeks relief for Defendants' substantive and procedural

13  violations of the Storm Water Permit and the Clean Water Act resulting from

14  Defendants' operations at 2821 East Washington Boulevard, Los Angeles, California

15  90023 ("A and A Facility" or "Facility").

16      8.   With every storm event, hundreds of millions of gallons of polluted

17  rainwater, originating from industrial operations such as the A and A Facility, pour into

18  Los Angeles area waters. The consensus among agencies and water quality specialists is

19  that storm water pollution accounts for more than half of the total pollution entering

20  marine and river environments each year. Los Angeles area waters are ecologically

21  sensitive areas and are essential habitat for dozens of fish and bird species as well as

22  macro-invertebrate and invertebrate species. Storm water and non-stormwater

23  contaminated with sediment, heavy metals, and other pollutants harm the special

24  aesthetic and recreational significance that Los Angeles area waters have for people in

25  the surrounding communities. The public's use of Los Angeles area waters for water

26  contact sports exposes many people to toxic metals and other contaminants in storm

27  water and non-stormwater discharges. Non-contact recreation and aesthetic opportunities,

28  such as wildlife observation, are also impaired by polluted discharges into Los Angeles

Complaint                                    3

1  area waters.

2  **III.    PARTIES**

3       **A.    Los Angeles Waterkeeper.**

4       9.    Los Angeles Waterkeeper is a non-profit public benefit corporation
5  organized under the laws of the State of California with its office at 120 Broadway, Suite
6  105, Santa Monica, California 90401.

7       10.    Founded in 1993, Waterkeeper has approximately 3,000 members who live
8  and/or recreate in and around the Los Angeles area. Waterkeeper is dedicated to the
9  preservation, protection, and defense of the environment, wildlife, and natural resources
10  of rivers, creeks, and coastal waters of Los Angeles County from all sources of pollution
11  and degradation. To further this mission, Waterkeeper actively seeks federal and state
12  implementation of the Clean Water Act. When necessary, Waterkeeper directly initiates
13  enforcement actions on behalf of itself and its members.

14       11.    Waterkeeper's members use and enjoy the waters into which Defendants
15  discharge polluted storm water. These waters include the Los Angeles River, Los
16  Angeles River Estuary, Los Angeles/Long Beach Harbor, San Pedro Bay, Long Beach
17  City Beach, and the Pacific Ocean (collectively "Receiving Waters"). Waterkeeper's
18  members use and enjoy the Receiving Waters for fishing, boating, wading, swimming,
19  diving, bird watching, picnicking, viewing wildlife, sailing, kayaking, hiking, biking,
20  engaging in scientific study, monitoring the watershed, and/or conducting watershed
21  restoration.

22       12.    Discharges of polluted storm water from the A and A Facility degrade water
23  quality, harm aquatic life in the Receiving Waters, and impair Waterkeeper's members'
24  use and enjoyment of the Receiving Waters.

25       13.    Defendants' polluted discharges from the A and A Facility are ongoing and
26  continuous. Thus, the interests of Waterkeeper's members have been, are being, and will
27  continue to be adversely affected by Defendants' failure to comply with the Clean Water
28  Act and the Storm Water Permit.

Complaint                    4

**B.     The A and A Facility Owners and/or Operators.**

14.     Waterkeeper is informed and believes, and thereon alleges, that A and A Metal Recycling, Inc., is an operator of the A and A Facility.

15.     Waterkeeper is informed and believes, and thereon alleges, that A and A Metal Recycling, Inc., has operated the A and A Facility since at least 20 April 2012.

16.     Waterkeeper is informed and believes, and thereon alleges, that A and A Metal Recycling, Inc., is an owner of the A and A Facility.

17.     Waterkeeper is informed and believes, and thereon alleges, that A and A Metal Recycling, Inc., has owned the A and A Facility since at least 20 April 2012.

18.     Waterkeeper is informed and believes, and thereon alleges, that A and A Metal Recycling, Inc., is an active corporation registered in California.

19.     Waterkeeper is informed and believes, and thereon alleges, that the Registered Agent for A and A Metal Recycling, Inc., is Sindy Cardona Escobar, 5535 Alba Street, Los Angeles, California 90058.

20.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona is an owner of A and A Metal Recycling, Inc.

21.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona has owned A and A Metal Recycling, Inc., since at least 20 April 2012.

22.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona is the President of A and A Metal Recycling, Inc.

23.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona has been President of A and A Metal Recycling, Inc., since at least 20 April 2012.

24.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona is also known as Sindy Cardona Escobar.

25.     Waterkeeper is informed and believes, and thereon alleges, that Sindy Cardona is an operator of the A and A Facility.

26.     Waterkeeper is informed and believes, and thereon alleges, that Sindy

1  Cardona has operated the A and A Facility since at least 20 April 2012.

2      27.    Waterkeeper is informed and believes, and thereon alleges, that Sindy

3  Cardona is an owner of the A and A Facility.

4      28.    Waterkeeper is informed and believes, and thereon alleges, that Sindy

5  Cardona has owned the A and A Facility since at least 20 April 2012.

6      29.    Waterkeeper refers to A and A Metal Recycling, Inc., and Sindy Cardona

7  collectively as the "A and A Facility Owners and/or Operators."

8  **IV.    LEGAL BACKGROUND**

9      **A.    The Clean Water Act and California Storm Water Permit.**

10     30.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the

11 discharge of any pollutant into waters of the United States not authorized by, or in

12 violation of, the terms of a National Pollutant Discharge Elimination System ("NPDES")

13 permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and

14 1342(b).

15     31.    Section 402(p) of the Clean Water Act, 33 U.S.C. § 1342(p), establishes a

16 framework for regulating industrial storm water discharges under the NPDES permit

17 program.

18     32.    Section 402(b) of the Clean Water Act, 33 U.S.C. § 1342(b), allows each

19 state to administer its own EPA-approved NPDES permit program for regulating the

20 discharge of pollutants, including discharges of polluted storm water. States with

21 approved NPDES permit programs are authorized by Section 402(b) to regulate industrial

22 storm water discharges through individual NPDES permits issued to dischargers and/or

23 through the issuance of a single, statewide, general NPDES permit applicable to all

24 industrial storm water dischargers. *See* 33 U.S.C. § 1342(b); 33 U.S.C. § 1342(b) §

25 1342(p).

26     33.    California is a state authorized by the EPA to issue NPDES permits.

27     34.    The Storm Water Permit is a statewide general NPDES permit issued by the

28 State Board pursuant to the Clean Water Act. *See* Storm Water Permit, Finding No. 15.

---

Complaint                          6

35.     In order to discharge storm water lawfully in California, industrial storm water dischargers must secure coverage under the Storm Water Permit and comply with its terms, or obtain and comply with an individual NPDES permit.

36.     Violations of the Storm Water Permit are violations of the Clean Water Act. *See* Storm Water Permit, Section C(1).

37.     Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), provides for citizen enforcement actions against any "person" who is alleged to be in violation of an "effluent standard or limitation . . . or an order issued by the Administrator or a State with respect to such a standard or limitation." *See* 33 U.S.C. §§ 1365(a)(i) and 1365(f).

38.     Each of the Receiving Waters is a "water of the United States" within the meaning of Section 502(7) of the Clean Water Act, 33 U.S.C. § 1362(7) and 33 C.F.R. § 328.3(a).

39.     A and A Metal Recycling, Inc., is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

40.     Sindy Cardona is a "person" within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

41.     An action for injunctive relief is authorized under Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a).

42.     Each separate violation of the Clean Water Act subjects the violator to a penalty of up to $37,500 per day for violations occurring after 12 January 2009. *See* 33 U.S.C. §§ 1319(d) and 1365(a); 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

43.     Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorneys' fees, experts' fees, and consultants' fees.

**B.      Effluent Limitation B(3) of the Storm Water Permit.**

44.     Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges

1    through the implementation of Best Available Technology Economically Achievable

2    ("BAT") for toxic or non-conventional pollutants and Best Conventional Pollutant

3    Control Technology ("BCT") for conventional pollutants. Toxic pollutants are listed at 40

4    C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional

5    pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand

6    ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and fecal

7    coliform, among others.

8         45.    EPA's NPDES Multi-Sector General Permit for Stormwater Discharges

9    Associated With Industrial Activity ("MSGP") sets numeric benchmarks for pollutant

10   concentrations in storm water discharges ("EPA Benchmarks").

11        46.    The EPA Benchmarks provide an objective standard to determine whether a

12   facility's Best Management Practices ("BMPs") are successfully developed and/or

13   implemented. *See* MSGP Fact Sheet, at 95 (2008), *available at*

14   http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

15        47.    Discharges from an industrial facility containing pollutant concentrations

16   that exceed EPA Benchmarks indicate that the facility has not developed and/or

17   implemented BMPs that meet BAT for toxic pollutants and BCT for conventional

18   pollutants. *Id.*

19        **C.    Receiving Water Limitations C(1) and C(2) of the Storm Water Permit.**

20        48.    Receiving Water Limitation C(1) of the Storm Water Permit prohibits storm

21   water discharges that adversely impact human health or the environment.

22        49.    Discharges with pollutant levels that exceed levels known to adversely

23   impact aquatic species and the environment are violations of Receiving Water Limitation

24   C(1) of the Storm Water Permit.

25        50.    Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm

26   water discharges that "cause or contribute to an exceedance of any applicable water

27   quality standard in a Statewide Water Quality Control Plan or the applicable Regional

28   Board's Basin Plan."

Complaint                                    8

51.     Water Quality Standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and/or the EPA to be protective of the beneficial uses of the waters that receive polluted discharges.

52.     WQS applicable to dischargers covered by the Storm Water Permit include, but are not limited to, those set out in the *Water Quality Control Plan, Los Angeles Region (Basin Plan for the Coastal Watersheds of Los Angeles and Ventura Counties)*, California Regional Water Quality Control Board, Los Angeles Region (4) (adopted June 13, 1994, as amended) ("Basin Plan"), and in the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), 40 C.F.R. § 131.38.

53.     The CTR includes numeric criteria set to protect human health and the environment in the state of California.[1]

54.     The Basin Plan identifies the "Beneficial Uses" of water bodies in the Los Angeles region.

55.     The Beneficial Uses for the Los Angeles River Watershed, which receives polluted storm water discharges from the A and A Facility, include water contact recreation (REC 1), non-contact water recreation (REC 2), warm freshwater habitat (WARM), ground water recharge (GWR), wildlife habitat (WILD), wetland (WET), estuarine habitat (EST), industrial service supply (IND), navigation (NAV), marine habitat (MAR), commercial fishing (COMM), rare, threatened, or endangered (RARE), migration of aquatic organisms (MIGR), and spawning, reproduction and/or early development (SPWN). *See* Basin Plan, Table 2-1.

56.     A surface water that cannot support its Beneficial Uses listed in the Basin Plan is designated as an impaired water body pursuant to Section 303(d) of the Clean Water Act, 33 U.S.C. § 1313(d).

57.     Waterkeeper is informed and believes, and thereon alleges, that discharges

---

[1] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at*: http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

of pollutants at levels above WQS, including the CTR, contribute to the impairment of the Beneficial Uses of the waters receiving the discharges.

58.    Reaches 1 and 2 of the Los Angeles River are impaired by pH, cyanide, diazinon, lead, nutrients, ammonia, cadmium, coliform bacteria, copper, trash, zinc, and oil. *See* 2010 Integrated Report – All Assessed Waters, available at: http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2010.shtml.

59.    The Los Angeles River Estuary is impaired by chlordane, sediment toxicity, and trash. *Id.*

60.    The Los Angeles/Long Beach Harbor is impaired by chrysene, copper, sediment toxicity, and zinc. *Id.*

61.    The San Pedro Bay is impaired by sediment toxicity. *Id.*

62.    The Long Beach City Beach, one of the San Pedro Bay beaches, is impaired by indicator bacteria. *Id.*

63.    Discharges with pollutant levels in excess of the CTR criteria, the Basin Plan, and/or other applicable WQS are violations of Receiving Water Limitation C(2) of the Storm Water Permit.

64.    Discharges with elevated levels of pollutant are violations of Receiving Water Limitation C(1) of the Storm Water Permit.

**D.    The Storm Water Permit's NOI Requirements.**

65.    Provision E(1) of the Storm Water Permit requires all facility operators seeking coverage by the Storm Water Permit to submit an NOI for each of the facilities they operate.

66.    Provision E(1) of the Storm Water Permit requires facility operators filing an NOI after 17 April 1997 to use the NOI instructions at Attachment 3 of the Storm Water Permit ("NOI Instructions").

67.    The NOI Instructions require facility operators to enter the total size of the facility (Part C) and identify Standard Industrial Classification ("SIC") codes that represent the industrial activities taking place at the facility (Part D). Storm Water Permit,

Attachment 3, NOI Instructions.

**E.     The Storm Water Permit's Storm Water Pollution Prevention Plan Requirements.**

68.     Section A(1) and Provision E(2) of the Storm Water Permit require dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit prior to commencing industrial activities.

69.     The objectives of the SWPPP are to identify and evaluate sources of pollutants associated with industrial activities that may affect the quality of storm water discharges, to identify and implement site-specific BMPs to prevent the exposure of pollutants to storm water, and to reduce or prevent the discharge of polluted storm water from industrial facilities. Storm Water Permit, Section A(2).

70.     Section A(3) of the Storm Water Permit requires a discharger to identify the members of its on-site Storm Water Pollution Prevention Team and to indicate each team member's responsibilities in developing, implementing and revising the SWPPP so as to ensure compliance with the Storm Water Permit.

71.     Section A(4) of the Storm Water Permit requires that the SWPPP include a site map that contains, among other requirements: the facility boundaries, storm water drainage areas and directions of flow for each drainage area, on-site surface water bodies, nearby water bodies, areas of soil erosion, and municipal storm drain inlets where the facility's storm water discharges may be received (Section A(4)(a)); the location of the storm water collection, conveyance, and discharge system and structural control measures that affect storm water discharges (Section A(4)(b)); an outline of all impervious areas of the facility, including paved areas, buildings, covered storage areas, or other roofed structures (Section (4)(c)); locations where materials are directly exposed to precipitation and where significant spills or leaks have occurred (Section A(4)(d)); and areas of industrial activity, including areas that are actual and potential pollutant sources (Section A(4)(e)).

72.     Section A(5) of the Storm Water Permit requires that the SWPPP include a list of significant materials handled and stored at the site.

73.     Section A(6)(a) of the Storm Water Permit requires that the SWPPP include a narrative description of the facility's industrial activities, associated potential pollutant sources, potential pollutants that could be discharged in storm water discharges, and all non-stormwater discharges.

74.     Section A(6)(b) of the Storm Water Permit requires that the SWPPP include a summary of all areas of industrial activities, potential pollutant sources, and potential pollutants.

75.     Section A(7)(a) of the Storm Water Permit requires that the SWPPP include a narrative assessment of all industrial activities and potential pollutant sources to determine which areas of the facility are likely sources of pollutants and which pollutants are likely to be present in the storm water discharges. Section A(7)(b) of the Storm Water Permit requires that the SWPPP include a summary of the areas of the facility that are likely sources of pollutants and the corresponding pollutants likely to be present in storm water discharges.

76.     Section A(8) of the Storm Water Permit requires that the SWPPP include a narrative description of the storm water BMPs to be implemented at the facility for each potential pollutant and its source. BMPs shall be developed and implemented to reduce or prevent pollutants in storm water discharges. Storm Water Permit, Section A(8). Dischargers must develop and implement structural and/or non-structural BMPs. *Id*.

77.     Section A(9) of the Storm Water Permit requires that the discharger evaluate the SWPPP on an annual basis and revise it as necessary to ensure compliance with the Storm Water Permit.

78.     Sections A(9)(a)-(c) of the Storm Water Permit require that the discharger conduct an annual comprehensive site compliance evaluation that includes a review of all visual observation records, inspection reports, and sampling and analysis results; a visual inspection of all potential pollutant sources for evidence of, or the potential for, pollutants

1   entering the drainage system; a review and evaluation of all BMPs to determine whether

2   the BMPs are adequate, properly implemented and maintained, or whether additional

3   BMPs are needed; and a visual inspection of equipment needed to implement the

4   SWPPP.

5       79.    Section A(9)(d) of the Storm Water Permit requires that the discharger

6   submit an evaluation report that includes identification of personnel performing the

7   evaluation, the date(s) of the evaluation(s), necessary SWPPP revisions, a schedule for

8   implementing SWPPP revisions, any incidents of non-compliance and the corrective

9   actions taken, and certification that the discharger is in compliance with the Storm Water

10  Permit. If certification of compliance cannot be provided, the discharger must explain in

11  the evaluation report why the facility is not in compliance with the Storm Water Permit.

12  Storm Water Permit, Section A(9)(d). The evaluation report shall be submitted as part of

13  the Annual Report, which is specified in Section B(14) of the Storm Water Permit. Storm

14  Water Permit, Section B(14).

15      80.    Section A(10) of the Storm Water Permit requires that the discharger revise

16  the SWPPP as necessary prior to changes in industrial activities, or as otherwise required

17  by the Storm Water Permit.

18      **F.    The Storm Water Permit's Monitoring and Reporting Requirements.**

19      81.    Section B(1) and Provision E(3) of the Storm Water Permit require

20  dischargers to develop and implement a Monitoring and Reporting Program ("M&RP")

21  prior to commencing industrial activities.

22      82.    The objectives of the M&RP are to confirm that BMPs have been adequately

23  developed and implemented such that storm water and non-stormwater discharges

24  comply with the Storm Water Permit's Discharge Prohibitions, Effluent Limitations, and

25  Receiving Water Limitations. Storm Water Permit, Sections B(2)(a) and B(2)(b).

26      83.    The M&RP aids in the implementation and revision of the SWPPP and

27  measures the effectiveness of BMPs to prevent or reduce pollutants in storm water

28  discharges. Storm Water Permit, Sections B(2)(c) and B(2)(d).

84.     Section B(2)(d) of the Storm Water Permit requires that the M&RP "shall be revised" as necessary to ensure compliance with the Storm Water Permit.

85.     Section B(3) of the Storm Water Permit requires a discharger to conduct visual observations of all drainage areas within the facility for the presence of authorized and unauthorized non-stormwater discharges. Observations under this section must occur during daylight hours, on days with no storm water discharges, and during scheduled facility operating hours. Storm Water Permit, Sections B(3).

86.     Section B(4) of the Storm Water Permit requires a discharger to conduct visual observations of storm water discharges during the first hour of discharge, at each discharge point, of at least one storm event per month during October 1 – May 30 ("Wet Season"). Observations under this section must take place during daylight hours, on days when the discharge is preceded by at least three (3) days without storm water discharges, and during scheduled facility operating hours. Storm Water Permit, Section B(4).

87.     Visual observations conducted under Sections B(3) and B(4) of the Storm Water Permit must be recorded. Storm Water Permit, Sections B(3)(d) and B(4)(c). Records of observations must describe the presence of any floating or suspended materials, O&G, discolorations, turbidity, odor, and the source of any pollutants observed during the visual observation. *Id*. Dischargers must maintain records of visual observations that include the observation date, locations observed, and responses taken to eliminate unauthorized non-stormwater discharges and to reduce or prevent pollutants from contacting non-stormwater and storm water discharges. *Id*. Furthermore, Sections B(3) and B(4) require a discharger to revise a facility's SWPPP in order to rectify any instances of noncompliance observed during visual observations. *Id*.

88.     Sections B(5) and B(7) of the Storm Water Permit require dischargers to visually observe and collect samples of storm water discharges from all locations where storm water is discharged.

89.     Section B(5)(a) of the Storm Water Permit requires dischargers to collect storm water samples during the first hour of discharge. Samples of storm water

discharges must be collected from the first storm event of the Wet Season and at least one other storm event in the Wet Season. Storm Water Permit, Section B(5)(a). All storm water discharge locations must be sampled. *Id*.

90.     Facility operators that do not collect samples from the first storm event of the Wet Season are still required to collect samples from two other storm events during the Wet Season, and must explain in the Annual Report why the first storm event was not sampled. *Id*.

91.     Section B(5)(b) requires that sampling conducted pursuant to the Storm Water Permit occur during scheduled facility operating hours on days that are preceded by at least three (3) working days without storm water discharge.

92.     Section B(5)(c)(i) of the Storm Water Permit requires dischargers to analyze each sample for pH, specific conductance ("SC"), TSS, and O&G. A discharger may substitute analysis for total organic carbon ("TOC") instead of O&G.

93.     Section B(5)(c)(ii) of the Storm Water Permit requires dischargers to analyze each sample for toxic chemicals and other pollutants likely to be present in the storm water discharged from the facility in significant quantities.

94.     Section B(5)(c)(iii) and Table D of the Storm Water Permit require facilities classified as SIC code 5093 to analyze storm water samples for iron, lead, aluminum, zinc, copper, and Chemical Oxygen Demand ("COD").

95.     Section B(5)(c)(iii) and Table D of the Storm Water Permit require facilities classified as SIC code 4953 to analyze storm water samples for ammonia, magnesium, arsenic, cadmium, cyanide, mercury, selenium, and silver.

96.     Section B(5)(c)(iv) of the Storm Water Permit requires dischargers to analyze each sample for all parameters as required by the Regional Board.

97.     Section B(14) of the Storm Water Permit requires dischargers to submit an Annual Report to the applicable regional board by July 1 of each year. The Annual Report must include a summary of visual observations and sampling results, an evaluation of the visual observations and sampling and analysis results, laboratory

Complaint                                    15

reports, the annual comprehensive site compliance evaluation report specified in Section A(9) of the Storm Water Permit, an explanation of why a facility did not implement any required activities, and other records specified in Section B(13) of the Storm Water Permit. Storm Water Permit, Section B(14).

98.    Section C(9) of the Storm Water Permit requires that all reports, certifications, or other information required by the Storm Water Permit or requested by a regional board to have been signed by an authorized representative of the facility's operators.

99.    Section C(10) of the Storm Water Permit requires any signatory subject to Section C(9) to make the following certification: "I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to ensure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

100.    Section C(11)(d) of the Storm Water Permit requires facility operators to report any incidence of noncompliance with the Storm Water Permit at the time monitoring reports are submitted. Reports of noncompliance must contain (1) a description of noncompliance and its cause, (2) the period of noncompliance, including exact dates and times, and if the noncompliance has not been corrected, the anticipated time it is expected to continue, and (3) steps taken or planned to reduce and prevent recurrence of the noncompliance. Storm Water Permit, Section C(11)(d).

## V.    FACTUAL BACKGROUND

### A.    Facility Site Description.

101.    Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators conduct industrial operations for A and A Metal

Recycling, Inc., at 2821 East Washington Boulevard, Los Angeles, California 90023.

102.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators conduct industrial operations at the A and A Facility under the name KSI Metals.

103.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility is bordered by East Washington Boulevard on the south and private property on the west, east, and north.

104.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility has one driveway at East Washington Boulevard.

**B.   The A and A Facility's Storm Water Permit Coverage.**

105.   On or about 20 April 2012, the A and A Facility Owners and/or Operators submitted a Notice of Intent to Comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity ("A and A Facility NOI") for the A and A Facility.

106.   The State Board confirmed receipt of the A and A NOI for the A and A Facility on 11 May 2012 ("NOI Receipt").

107.   The A and A Facility NOI identifies the operator of the A and A Facility as "Sindy Cardona."

108.   The A and A Facility NOI identifies the Facility name and location as "A&A Metal Recycling Inc., 2821 East Washington Blvd, Los Angeles, CA, 90023."

109.   The State Board's electronic database, called the Storm Water Multiple Application & Report Tracking System ("SMARTS"),[2] identifies the Facility operator and address as "Sindy Cardona, 652 E 83rd St Los Angeles California 90001."

110.   SMARTS identifies the Facility name and address as "A and A Metal Recycling Inc, 2821 E Washington Blvd Los Angeles California 90023."

111.   SMARTS lists the A and A Facility's coverage under the Storm Water Permit as "Active."

---

[2] Available at http://smarts.waterboards.ca.gov/.

112.   The NOI Receipt and SMARTS list the A and A Facility Waste Discharge Identification ("WDID") number as 4 19I023633.

113.   The A and A Facility NOI lists the SIC code for the A and A Facility as 5093.

114.   The A and A Facility NOI lists the total size of the Facility as 20,900 square feet.

**C.   Defendant's SWPPP and M&RP for the A and A Facility.**

115.   Waterkeeper is informed and believes, and thereon alleges, that on or about 22 July 2014, the A and A Facility Owners and/or Operators submitted to the Regional Board a copy of the A and A Facility SWPPP, which was signed and dated 24 June 2014 by Sindy Cardona ("A and A Facility SWPPP").

116.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP is the A and A Facility's current SWPPP.

**D.   Industrial Activities at the A and A Facility.**

117.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility's industrial activities and areas of industrial activity are pollutant sources.

118.   Waterkeeper is informed and believes, and thereon alleges, that the following industrial activities are conducted at the A and A Facility: unloading, sorting, temporary storage, weighing, processing, and transfer of metal scraps as well as appliances, vehicle components and tires, electronic waste, and a variety of other materials; receipt and storage of hazardous waste; vehicle and equipment storage.

119.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators conduct unloading, sorting, temporary storage, processing, and transfer of metal scraps as well as appliances, vehicle components and tires, and electronic waste in the southern portion of the Facility, near the Facility's driveway at East Washington Boulevard.

120.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility receives and stores hazardous waste at the Facility, including vehicle waste

fluids.

121.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators conduct receipt and storage of hazardous waste outdoors, in the southern portion of the Facility, near the Facility's driveway at East Washington Boulevard.

122.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators conduct vehicle and equipment storage in the southern portion of the Facility, near the Facility's driveway at East Washington Boulevard.

123.   Waterkeeper is informed and believes, and thereon alleges, that industrial activities at the A and A Facility are conducted outdoors and without adequate cover or other measures to prevent the exposure of industrial activities to rainfall.

124.   Waterkeeper is informed and believes, and thereon alleges, that industrial activities at the A and A Facility are conducted outdoors without secondary containment or other measures to prevent polluted storm water from discharging from the Facility.

125.   Waterkeeper is informed and believes, and thereon alleges, that materials associated with industrial activities at the A and A Facility are stored near the Facility's discharge point at the East Washington Boulevard driveway.

126.   Waterkeeper is informed and believes, and thereon alleges, that materials associated with industrial activities at the A and A Facility, such as tires, vehicle brake pads and rotors, trash, and other materials are scattered on the Facility's grounds, including near the Facility's discharge point at the East Washington Boulevard driveway.

127.   Waterkeeper is informed and believe, and thereon alleges, that the A and A Facility has no sediment control devices to prevent the tracking of pollutants within and off the Facility by vehicles driving through the Facility and exiting via the Facility's driveway.

128.   Waterkeeper is informed and believes, and thereon alleges, that O&G, trash, debris, and other pollutants, including metals and pathogens, have been and continue to be tracked throughout the A and A Facility.

129.   Waterkeeper is informed and believes, and thereon alleges, that trucks and vehicles leaving the A and A Facility via the East Washington Boulevard driveway are pollutant sources tracking sediment, O&G, metal particles, trash, debris, and other pollutants off the Facility.

130.   Waterkeeper is informed and believes, and thereon alleges, that sources of pollutants at the A and A Facility include: outdoor material handling and storage areas; outdoor material processing areas; metal structures; loose piles of waste and recyclable materials; uncovered roll-off bins, dumpsters, and other containers; vehicle and equipment storage areas; hazardous waste storage areas; loading and unloading areas; areas with vehicle and equipment traffic and associated track-off of pollutants; on-site material handling equipment; and other industrial equipment.

131.   Waterkeeper is informed and believes, and thereon alleges, that the pollutants associated with operations at the A and A Facility include, but are not limited to: trash; recyclable materials; fugitive and other dust and debris; metals such as aluminum, copper, iron, lead, and zinc; mercury; O&G; pathogens (including bacteria); pH-affecting substances; lubrication fluids; solvents and cleaners; fuels and fuel additives; and TSS.

132.   Waterkeeper is informed and believes, and thereon alleges, that pollutants accumulate on the A and A Facility at material handling, storage, sorting, and processing areas; the hazardous waste storage area; vehicle and equipment storage areas; loading and unloading areas; the driveway leading to East Washington Boulevard; and the surrounding sidewalks and municipal streets themselves, including East Washington Boulevard.

133.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators have failed to adequately develop and/or implement BMPs to prevent the exposure of pollutants and their sources to storm water flows at the A and A Facility, in violation of the Storm Water Permit and the Clean Water Act.

134.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

Facility Owners and/or Operators have failed to adequately develop and/or implement BMPs sufficient to reduce or prevent pollutants in storm water discharged from the A and A Facility, as required by the Storm Water Permit and the Clean Water Act.

135.   The failure to properly address pollutants and their sources results in the discharge of pollutants from the A and A Facility in violation of the Storm Water Permit and the Clean Water Act.

**E.    Storm Water Discharges at the A and A Facility.**

136.   The A and A Facility Owners and/or Operators state in the A and A Facility SWPPP that the Facility has one discharge point located at the "South Entrance/Exit Gate."

137.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility has at least one discharge point, located at the Facility's driveway at East Washington Boulevard ("East Washington Blvd. Discharge Point").

138.   Waterkeeper is informed and believes, and thereon alleges, that the East Washington Blvd. Discharge Point receives storm water flows from the entire Facility.

139.   Waterkeeper is informed and believes, and thereon alleges, that the East Washington Blvd. Discharge Point flows to the Los Angeles area municipal separate storm sewer system, which carries the discharges from the A and A Facility to the Receiving Waters.

**F.    Defendant's Failure to Comply with the Storm Water Permit's Notice of Intent Requirements.**

140.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to comply with the Storm Water Permit's notice of intent requirements, including the instructions at Attachment 3 ("NOI Instructions"), in violation of Provision E(1).

141.   The A and A Facility SWPPP, at page 16, states that the A and A Facility receives and stores "[w]aste fluids consisting of vehicle fluids such as oil and hydraulic fluids" from customers.

142.   Waterkeeper is informed and believes, and thereon alleges, that SIC code 4953 is applicable to the Facility's industrial activities because the Facility receives and stores hazardous waste fluids.

143.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to include in the A and A Facility NOI all regulated industrial activities occurring at the A and A Facility, including but not limited to activities covered by SIC code 4953.

144.   The A and A NOI inaccurately states that the receiving water for the A and A Facility's storm water discharge is Compton Creek.

145.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility's storm water is discharged to the Los Angeles River.[3]

146.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators fail and continue to fail to accurately state the receiving water for the A and A Facility's storm water discharges in the A and A NOI.

### G.   The Storm Water Discharges at the A and A Facility Contain Elevated Levels of Pollutants.

147.   On 24 January 2013, Waterkeeper collected samples of storm water discharges at the A and A Facility's East Washington Boulevard Discharge Point.

148.   On 8 March 2013, Waterkeeper collected samples of storm water discharges at the A and A Facility's East Washington Boulevard Discharge Point.

149.   On 27 February 2014, Waterkeeper collected samples of storm water discharges at the A and A Facility's East Washington Boulevard Discharge Point.

150.   On 2 December 2014, Waterkeeper collected samples of storm water discharges at the A and A Facility's East Washington Boulevard Discharge Point.

151.   On 12 December 2014, Waterkeeper collected samples of storm water

---

[3] Los Angeles County Department of Public Works' Los Angeles County Storm Drain System Map, available at http://dpw.lacounty.gov/fcd/stormdrain/index.cfm (searches for address "2821 East Washington Blvd" show the receiving water for the A and A Facility's discharges is Los Angeles River).

1  discharges at the A and A Facility's East Washington Boulevard Discharge Point.

2      152.   Waterkeeper's samples of storm water discharges collected at the A and A

3  Facility contain levels of pollutants in excess of EPA Benchmarks. *See* Exhibit A at §

4  II.B.2 (identifying specific storm water samples with TSS, SC, O&G, COD, pH, iron,

5  copper, zinc, magnesium, aluminum, lead, cadmium, mercury, and silver concentrations

6  above EPA Benchmarks).

7      153.   Waterkeeper is informed and believes, and thereon alleges, that repeated

8  exceedances of EPA Benchmarks demonstrate that Defendants failed and continue to fail

9  to develop and/or implement required BMPs at the A and A Facility that achieve

10  compliance with BAT/BCT standards.

11      154.   Waterkeeper is informed and believes, and thereon alleges, that each time

12  the A and A Facility discharges storm water the discharges contain levels of pollutants

13  that demonstrate the A and A Facility Owners' and/or Operators' failure to achieve

14  compliance with BAT/BCT standards. *See* Storm Water Permit, Effluent Limitations

15  B(3).

16      155.   Samples of storm water discharges collected at the A and A Facility contain

17  levels of pollutants in excess of WQS. *See* Exhibit A at § II.C (identifying specific storm

18  water samples with copper, lead, zinc, mercury, and cadmium concentrations above

19  WQS).

20      156.   Samples of storm water discharges collected at the A and A Facility contain

21  concentrations of pollutants at levels known to adversely impact aquatic species and the

22  environment. *See* Exhibit A at § II.C.

23      **H.   Defendants' Failure to Comply with the Storm Water Permit's SWPPP
          Requirements.**

24

25      157.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

26  Owners and/or Operators commenced industrial operations at the A and A Facility prior

27  to developing a SWPPP.

28      158.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

Owners and/or Operators commenced industrial operations at the A and A Facility prior to implementing a SWPPP.

159.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Owners and/or Operators operated the A and A Facility without a SWPPP for the Facility until on or about 24 June 2014.

160.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to develop a SWPPP for the A and A Facility that complies with Section A of the Storm Water Permit since obtaining coverage on or about 20 April 2012.

161.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to implement a SWPPP for the A and A Facility that complies with Section A of the Storm Water Permit since obtaining coverage on or about 20 April 2012.

162.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to revise a SWPPP for the A and A Facility that complies with Section A of the Storm Water Permit.

163.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to include a Pollution Prevention Team that identifies individuals responsible for sampling and visual monitoring as required by Section A(3)(a) of the Storm Water Permit.

164.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to include a Pollution Prevention Team that identifies the individuals responsible for BMP implementation as required by Section A(3)(a) of the Storm Water Permit.

165.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to include a site map of the A and A Facility that includes points of discharge, outlines of all storm drainage areas with indicators of flow direction in each area, identification of nearby water bodies, municipal storm drain inlets where the

Complaint                                    24

Facility's storm water discharges may be received, locations of all storm water collection and conveyance systems, all structural control measures that affect storm water discharges, outlines of all impervious areas, locations where materials are directly exposed to precipitation, and all areas of industrial activity, including the separation and dismantling area, as required by Section A(4) of the Storm Water Permit.

166.   The A and A Facility SWPPP's "Description of Potential Pollutants," at pages 6–7, does not list pH-, SC-, and COD-affecting substances, TSS, iron, copper, zinc, magnesium, aluminum, lead, mercury, cadmium, or silver as potential pollutants.

167.   The A and A Facility SWPPP's "Description of Potential Pollutants," at pages 6–7, does not identify the Facility's sources of potential pollutants such as pH-, SC-, and COD-affecting substances, iron, copper, zinc, magnesium, aluminum, lead, mercury, cadmium, or silver.

168.   The A and A Facility SWPPP's "Description of Potential Pollutants," at page 6, states that the A and A Facility's "outdoor storage is always changing in composition and there is a chance that storm water may carry any of the contaminants present in these materials into the pavement."

169.   The A and A Facility SWPPP's "Description of Potential Pollutants," at page 6, states that the A and A Facility's "Miscellaneous Appliances Storage consists [of] used appliances such as refrigerators, dishwashers, dryers [and] other type[s] of household or commercial equipment that contains wiring, metallic or others parts that may have residual contaminants."

170.   The A and A Facility SWPPP's "Description of Potential Pollutants," at page 6, states that "[d]uring the separation/dismantling process, small solids pieces may end up in the floor areas representing a potential pollutant . . . ."

171.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to include all potential pollutants that could be discharged in storm water discharges, as required by Section A(6)(a) of the Storm Water Permit.

172.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

1   Facility SWPPP's "Individual BMPs to Control Pollutants," at pages 12–17, does not

2   identify all potential pollutants associated with each pollutant source.

3       173.   Neither the A and A Facility SWPPP's "Description of Potential Pollutants,"

4   at page 6, nor the "Individual BMPs to Control Pollutants," at page 15, identifies the

5   pollutant characteristics associated with the dismantling activities at the A and A Facility

6   or the quantity of associated materials.

7       174.   The A and A Facility SWPPP's Significant Material List, at page 8, only

8   lists "55 gallon Used Liquid Oil" and "55 gallons Solid Used Absorbent" as the

9   significant materials stored at the A and A Facility.

10      175.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

11  Facility SWPPP fails to include all significant materials handled or stored at the site and

12  the typical quantities of those materials, including but not limited to such as metal scraps,

13  electronic waste, waste fluids, tires, vehicle components, and other materials, as required

14  by Sections A(5) and A(6) of the Storm Water Permit.

15      176.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

16  Facility SWPPP fails to include the type, characteristics, and quantities of all significant

17  materials used in or resulting from each industrial process, as required by Section

18  A(6)(a)(i) of the Storm Water Permit.

19      177.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

20  Facility SWPPP fails to include the type, characteristics, and quantities of all significant

21  materials handled or stored at the Facility, as required by Section A(6)(a)(ii) of the Storm

22  Water Permit.

23      178.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

24  Facility SWPPP fails to identify the characteristics of dust and particulate pollutants and

25  the approximate quantity of dust and particulate pollutants that may be deposited within

26  the Facility, as required by Section A(6)(a)(iii) of the Storm Water Permit.

27      179.   The A and A Facility SWPPP does not describe potential sources of non-

28  stormwater discharges.

180.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to describe potential sources of non-stormwater discharges, as required by Section A(6)(a)(v) of the Storm Water Permit.

181.   The A and A Facility SWPPP does not include a narrative description of the BMPs to be implemented for every potential pollutant and its source.

182.   The A and A Facility SWPPP's "Individual BMPs to Control Pollutants" does not identify all potential pollutants and their associated pollutant sources.

183.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP fails to include a narrative assessment of all industrial activities and potential pollutant sources in accordance with Section A(7)(a) of the Storm Water Permit.

184.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators fail to include an adequate summary of all BMPs implemented for each pollutant source in a manner similar to the Storm Water Permit's Table B, as required by Section A(8) of the Storm Water Permit.

185.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators have failed and continue to fail to revise and evaluate the A and A Facility SWPPP, including the SWPPP's descriptions of potential pollutants, pollutant sources, and industrial processes, as necessary to develop and implement adequate BMPs, as required by Section A(7) of the Storm Water Permit.

186.   Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all pollutant sources and potential pollutants at the Facility in the SWPPP, the A and A Facility Owners and/or Operators cannot and have not developed all appropriate BMPs.

187.   Waterkeeper is informed and believes, and thereon alleges, that without properly identifying all pollutant sources and potential pollutants at the Facility in the A and A Facility SWPPP, the A and A Facility Owners and/or Operators cannot and have not implemented all appropriate BMPs.

188.   Waterkeeper is informed and believes, and thereon alleges, that the A and A

Facility SWPPP does not include an assessment of the Facility's BMPs corresponding to potential pollutant sources and associated pollutants.

189. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators have failed and continue to fail to assess all potential pollutant sources at the Facility.

190. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators have failed and continue to fail to assess the Facility's BMPs corresponding to potential pollutant sources and associated pollutants.

191. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP does not include an adequate analysis of the effectiveness of the BMPs at the Facility.

192. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owner and/or Operators have failed and continue to fail to analyze the effectiveness of the BMPs at the Facility.

193. The A and A Facility SWPPP's "General BMPs to Control Potential Pollutants," at page 9, states that the A and A Facility's only structural general BMP is the Facility's fully paved surface.

194. The A and A Facility SWPPP's "Individual BMPs to Control Pollutants," at page 12, states that the A and A Facility's only structural individual BMP for the Scrap Metal Pile is the storage of scrap metal in containers.

195. Based on Waterkeeper's observations, Waterkeeper is informed and believes, and thereon alleges, that the Facility's containers are regularly stored without cover.

196. The A and A Facility SWPPP's "Individual BMPs to Control Pollutants," at page 13, states that the A and A Facility has no structural individual BMPs for the Miscellaneous Appliances Storage Area.

197. The A and A Facility SWPPP's "Individual BMPs to Control Pollutants," at page 14, states that the A and A Facility's only structural individual BMPs for the

Vehicle Parking and Unloading Areas are trash cans and "secondary containment [that] is used for waste fluids dumped in the paved areas."

198.   Based on Waterkeeper's observations, Waterkeeper is informed and believes, and thereon alleges, that the Facility has no structural secondary containment in the Vehicle Parking and Unloading Areas.

199.   The A and A Facility SWPPP's "Individual BMPs to Control Pollutants," at page 15, states "All Separation/Dismantling is done outdoors" as the A and A Facility's only structural individual BMP for the Separation and Dismantling Area.

200.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP does not include adequate structural BMPs to reduce or prevent pollutants in storm water discharges, as required by Section A(8)(b) of the Storm Water Permit.

201.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP does not include adequate BMPs to reduce or prevent pollutants in storm water discharges to levels required by the Storm Water Permit.

202.   Waterkeeper is informed and believes, and thereon alleges, that the repeated and significant exceedances of benchmark levels demonstrate that the A and A Facility Owners and/or Operators failed and continue to fail to develop BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

203.   Waterkeeper is informed and believes, and thereon alleges, that the repeated and significant exceedances of benchmark levels demonstrate that the A and A Facility Owners and/or Operators failed and continue to fail to implement BMPs to prevent the exposure of pollutants to storm water, and to prevent discharges of polluted storm water from the Facility.

204.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility SWPPP does not include adequate BMPs developed and/or implemented to control non-stormwater discharges.

**I.     Defendants' Failure to Comply with the Storm Water Permit's M&RP Requirements.**

205.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Owners and/or Operators commenced industrial operations at the A and A Facility prior to developing a M&RP.

206.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Owners and/or Operators commenced industrial operations at the A and A Facility prior to implementing a M&RP.

207.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Owners and/or Operators operated the A and A Facility without an M&RP for the Facility until on or about 24 June 2014.

208.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to develop an adequate M&RP for industrial operations at the A and A Facility that complies with Section B of the Storm Water Permit since obtaining coverage on or about 20 April 2012.

209.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to implement an adequate M&RP for industrial operations at the A and A Facility that complies with Section B of the Storm Water Permit since obtaining coverage on or about 20 April 2012.

210.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to revise a M&RP for the A and A Facility that complies with Section A of the Storm Water Permit.

211.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators were obligated under the Storm Water Permit to collect storm water samples during the 2011-2012, 2012-2013 and 2013-2014 Wet Seasons.

212.   Via a Public Records Act request to the Regional Board, Waterkeeper obtained a 2011–2012 Annual Report for the Facility, which was signed and dated by Sindy Cardona on 8 August 2014.

213. Waterkeeper is informed and believes, and thereon alleges, that the 2011–2012 Annual Report for the Facility, signed and dated by Sindy Cardona on 8 August 2014 (hereinafter referred to as the "2011-2012 Annual Report"), obtained from the Regional Board is the 2011–2012 Annual Report for the A and A Facility.

214. Via a Public Records Act request to the Regional Board, Waterkeeper obtained a 2012–2013 Annual Report for the Facility, which was signed and dated by Sindy Cardona on 8 August 2014.

215. Waterkeeper is informed and believes, and thereon alleges, that the 2012–2013 Annual Report for the Facility, signed and dated by Sindy Cardona on 8 August 2014 (hereinafter referred to as the "2012-2013 Annual Report"), obtained from the Regional Board is the 2012–2013 Annual Report for the A and A Facility.

216. Via a Public Records Act request to the Regional Board, Waterkeeper obtained a 2013–2014 Annual Report for the Facility, which was signed and dated by Sindy Cardona on 24 June 2014.

217. Waterkeeper is informed and believes, and thereon alleges, that the 2013–2014 Annual Report for the Facility, signed and dated by Sindy Cardona on 11 August 2014 (hereinafter referred to as the "2013-2014 Annual Report"), obtained from the Regional Board is the 2013–2014 Annual Report for the A and A Facility.

218. The 2011-2012, 2012-2013, and 2013-2014 Annual Reports state that the A and A Facility Owners and/or Operators failed to conduct any storm water sampling and analysis at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons.

219. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to conduct any storm water sampling and analysis at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons, as required by Section B(5) of the Storm Water Permit.

220. The 2011-2012, 2012-2013, and 2013-2014 Annual Reports state that the A and A Facility Owners and/or Operators failed to conduct any quarterly visual

observations at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons.

221. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to conduct any quarterly visual observations at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons, as required by Section B(3) of the Storm Water Permit.

222. The 2011-2012, 2012-2013, and 2013-2014 Annual Reports state that the A and A Facility Owners and/or Operators failed to conduct any monthly wet season visual observations at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons.

223. Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility Owners and/or Operators failed and continue to fail to conduct any monthly wet season visual observations at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons, as required by Section B(3) of the Storm Water Permit.

224. The 2011-2012, 2012-2013, and 2013-2014 Annual Reports state that the A and A Facility Owners and/or Operators failed to conduct any Annual Comprehensive Site Compliance Evaluations ("ACSCE") at the A and A Facility during the 2011-2012, 2012-2013, and 2013-2014 Wet Seasons.

225. Waterkeeper is informed and believes, and thereon alleges, that the A and A Owners and/or Operators failed and continue to fail to conduct an ACSCE during each reporting period, as required by Section A(9) of the Storm Water Permit.

226. The A and A Facility's M&RP contained in the A and A Facility SWPPP, at page 20, indicates that the A and A Facility Owners and/or Operators only intend to sample for TSS, pH, SC, O&G or TOC, zinc, lead, copper, and COD.

227. The A and A Facility's M&RP contained in the A and A Facility SWPPP, at page 20, fails to include aluminum and iron as parameters for which samples will be analyzed as part of the M&RP.

228. The A and A Facility's M&RP contained in the A and A Facility SWPPP, at

page 20, fails to include ammonia, magnesium, arsenic, cadmium, cyanide, mercury, and selenium as parameters for which samples will be analyzed as part of the M&RP.

229.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility's M&RP fails to include all analytical parameters associated with SIC code 5093 as provided in Table D of the Storm Water Permit, as required by Section B(5)(c)(iii) of the Storm Water Permit.

230.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility's M&RP fails to include all analytical parameters associated with SIC code 4953 as provided in Table D of the Storm Water Permit, as required by Section B(5)(c)(iii) of the Storm Water Permit.

231.   The A and A Facility's M&RP contained in the A and A Facility SWPPP does not provide for sampling to identify any toxic chemicals or other pollutants that are likely to be present in storm water discharges in significant quantities.

232.   Waterkeeper is informed and believes, and thereon alleges, that the A and A Facility's M&RP fails to include for sampling to identify any toxic chemicals or other pollutants that are likely to be present in storm water discharges in significant quantities, as required by Section B(5)(c)(ii) of the Storm Water Permit.

## VI.   CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Defendants' Failure to Submit an NOI that Complies with the Storm Water Permit's NOI Instructions in Violation of the Storm Water Permit's Provision E(1) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

233.   Waterkeeper incorporates the allegations contained in the above paragraphs and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

234.   Waterkeeper is informed and believes, and thereon alleges, that Defendants failed and continue to fail to comply with the Storm Water Permit's NOI Instructions, in violation of Provision E(1).

235.   Defendants have been in violation of Provision E(1) of the Storm Water

Complaint                                    33

Permit every day since at least 20 April 2012 for failing to submit an NOI for the A and A Facility that complies with the NOI Instructions.

236.   Waterkeeper is informed and believes, and thereon alleges, that Defendants' violations of the Storm Water Permit's Provision E(1) and the Clean Water Act are ongoing and continuous.

237.   Defendants will continue to be in violation of the Storm Water Permit's Provision E(1) and the Clean Water Act each and every day they operate the A and A Facility without complying with the Storm Water Permit's NOI Instructions.

238.   Each and every day Defendants operate the A and A Facility in violation of Provision E(1) of the Storm Water Permit is a separate and distinct violation of the Clean Water Act.

239.   Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the Clean Water Act since 20 April 2012.

240.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth hereafter.

## SECOND CAUSE OF ACTION
**Defendants' Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Effluent Limitation B(3) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

241.   Waterkeeper incorporates the allegations contained in the above paragraphs and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

242.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

1  failed and continue to fail to reduce or prevent pollutants associated with industrial

2  activities in the A and A Facility discharges to levels that, through the development of

3  BMPs, achieve BAT/BCT.

4      243.  Waterkeeper is informed and believes, and thereon alleges, that Defendants

5  failed and continue to fail to reduce or prevent pollutants associated with industrial

6  activities in the A and A Facility discharges to levels that, through the implementation of

7  BMPs, achieve BAT/BCT.

8      244.  Waterkeeper is informed and believes, and thereon alleges, that discharges

9  of storm water containing levels of pollutants that do not achieve compliance with

10  BAT/BCT standards is discharged from the A and A Facility each time storm water

11  discharges from the A and A Facility.

12      245.  Defendants violate Effluent Limitation B(3) of the Storm Water Permit each

13  and every time storm water containing levels of pollutants that do not achieve compliance

14  with BAT/BCT standards is discharged from the A and A Facility.

15      246.  Waterkeeper is informed and believes, and thereon alleges, that Defendants'

16  violations of Effluent Limitation B(3) of the Storm Water Permit and the Clean Water

17  Act are ongoing and continuous.

18      247.  Defendants will continue to violate the Storm Water Permit and the Clean

19  Water Act each and every time contaminated storm water discharges from the A and A

20  Facility in violation of Effluent Limitation B(3) of the Storm Water Permit.

21      248.  Each and every time Defendants discharge contaminated storm water from

22  the A and A Facility in violation of Effluent Limitation B(3) of the Storm Water Permit is

23  a separate and distinct violation of Section 301(a) of the Clean Water Act, 33 U.S.C. §

24  1311(a).

25      249.  Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§

26  1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged

27  above, Defendants are subject to an assessment of civil penalties for each and every

28  violation of the Clean Water Act since 20 April 2012.

250. An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth hereafter.

### THIRD CAUSE OF ACTION
**Defendants' Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Receiving Water Limitation C(1) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

251. Waterkeeper incorporates the allegations contained in the above paragraphs and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

252. Waterkeeper is informed and believes, and thereon alleges, that Defendants discharged and continue to discharge storm water containing levels of pollutants that adversely impact human health and/or the environment from the A and A Facility.

253. Waterkeeper is informed and believes, and thereon alleges, that each time storm water is discharged from the And A Facility it contains levels of pollutants that adversely impact human health and/or the environment.

254. Defendants violate Receiving Water Limitation C(1) of the Storm Water Permit each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment discharges from the A and A Facility.

255. Waterkeeper is informed and believes, and thereon alleges, that Defendants' violations of Receiving Water Limitation C(1) of the Storm Water Permit and the Clean Water Act are ongoing and continuous.

256. Defendants will continue to be in violation of the Storm Water Permit and the CWA each and every time contaminated storm water discharges from the A and A Facility in violation of Receiving Water Limitation C(1) of the Storm Water Permit.

257. Each and every violation of Receiving Water Limitation C(1) of the Storm Water Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C.

Complaint                                    36

§ 1311(a).

258.   Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the Clean Water Act since 20 April 2012.

259.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth hereafter.

## FOURTH CAUSE OF ACTION

**Defendants' Discharges of Contaminated Storm Water in Violation of the Storm Water Permit's Receiving Water Limitation C(2) and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

260.   Waterkeeper incorporates the allegations contained in the above paragraphs and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

261.   Waterkeeper is informed and believes, and thereon alleges, that Defendants have discharged and continue to discharge storm water containing levels of pollutants from the A and A Facility that cause or contribute to exceedances of water quality standards.

262.   Waterkeeper is informed and believes, and thereon alleges, that each time storm water is discharged from the A and A Facility it contains levels of pollutants that cause or contribute to exceedances of water quality standards.

263.   Defendants violate Receiving Water Limitation C(2) of the Storm Water Permit each and every time storm water containing levels of pollutants that cause or contribute to exceedances of water quality standards discharges from the A and A Facility.

264.   Waterkeeper is informed and believes, and thereon alleges, that Defendants'

violations of Receiving Water Limitation C(2) of the Storm Water Permit and Clean Water Act are ongoing and continuous.

265.   Each and every violation of Receiving Water Limitation C(2) of the Storm Water Permit is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

266.   Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties for each and every violation of the Clean Water Act since 20 April 2012.

267.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no plain, speedy, or adequate remedy at law.

WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth hereafter.

## FIFTH CAUSE OF ACTION
**Defendants' Failure to Adequately Develop, Implement, and/or Revise a Storm Water Pollution Prevention Plan in Violation of the Storm Water Permit and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

268.   Waterkeeper incorporates the allegations contained in the above paragraphs and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

269.   Waterkeeper is informed and believes, and thereon alleges, that Defendants failed and continue to fail to adequately develop a SWPPP for the A and A Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

270.   Waterkeeper is informed and believes, and thereon alleges, that Defendants failed and continue to fail to adequately implement a SWPPP for the A and A Facility, in violation of Section A and Provision E(2) of the Storm Water Permit.

271.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

1   failed and continue to fail to adequately revise a SWPPP for the A and A Facility, in

2   violation of Sections A(9) and A(10) of the Storm Water Permit.

3   272.   Defendants have been in violation of Section A and Provision E(2) of the

4   Storm Water Permit for failing to develop, implement, and/or revise an adequate SWPPP

5   for the A and A Facility every day since at least 20 April 2012.

6   273.   Defendants' violations of Section A and Provision E(2) of the Storm Water

7   Permit and the Clean Water Act are ongoing and continuous.

8   274.   Defendants will continue to be in violation of Section A and Provision E(2)

9   of the Storm Water Permit and the Clean Water Act each and every day Defendants

10  operate the A and A Facility without an adequately developed, implemented, and/or

11  revised SWPPP for the A and A Facility.

12  275.   Each and every violation of the Storm Water Permit's SWPPP requirements

13  at the A and A Facility is a separate and distinct violation of the Clean Water Act.

14  276.   Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§

15  1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged

16  above, Defendants are subject to an assessment of civil penalties for each and every

17  violation of the Clean Water Act since 20 April 2012.

18  277.   An action for injunctive relief under the Clean Water Act is authorized by 33

19  U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

20  irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no

21  plain, speedy, or adequate remedy at law.

22  WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth

23  hereafter.

## SIXTH CAUSE OF ACTION

**Defendants' Failure to Adequately Develop, Implement, and/or Revise a Monitoring and Reporting Program in Violation of the Storm Water Permit and the Clean Water Act.**

### 33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)

28  278.   Waterkeeper incorporates the allegations contained in the above paragraphs

Complaint                              39

1    and in the Notice Letter, attached as Exhibit A, as though fully set forth herein.

2        279.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

3    failed and continue to fail to adequately develop an M&RP for the A and A Facility, in

4    violation of Section B and Provision E(3) of the Storm Water Permit.

5        280.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

6    failed and continue to fail to adequately implement an M&RP for the A and A Facility, in

7    violation of Section B and Provision E(3) of the Storm Water Permit.

8        281.   Waterkeeper is informed and believes, and thereon alleges, that Defendants

9    failed and continue to fail to adequately revise an M&RP for the A and A Facility, in

10   violation of Section B and Provision E(3) of the Storm Water Permit.

11       282.   Defendants have been in violation of Section B and Provision E(3) of the

12   Storm Water Permit for their failure to develop, implement, and/or revise an adequate

13   M&RP for the A and A Facility every day since at least 20 April 2012.

14       283.   Defendants' violations of Section B and Provision E(3) of the Storm Water

15   Permit and the Clean Water Act are ongoing and continuous.

16       284.   Defendants will continue to be in violation of Section B and Provision E(3)

17   the Storm Water Permit and the Clean Water Act each and every day Defendants operate

18   the A and A Facility without an adequately developed, implemented, and/or revised

19   M&RP for the A and A Facility.

20       285.   Each and every violation of the Storm Water Permit's M&RP requirements

21   at the A and A Facility is a separate and distinct violation of the Clean Water Act.

22       286.   Pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§

23   1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged

24   above, Defendants are subject to an assessment of civil penalties for each and every

25   violation of the Clean Water Act since 15 October 2009.

26       287.   An action for injunctive relief under the Clean Water Act is authorized by 33

27   U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

28   irreparably harm Waterkeeper and its members, for which harm Waterkeeper has no

plain, speedy, or adequate remedy at law.

WHEREFORE, Waterkeeper prays for judgment against Defendants as set forth hereafter.

## VII.    RELIEF REQUESTED

288.   Waterkeeper respectfully requests that this Court grant the following relief:

a.    A Court order declaring Defendants to have violated and to be in violation of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a), for their violations of the substantive and procedural requirements of the Storm Water Permit;

b.    A Court order enjoining Defendants from violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

c.    A Court order assessing civil monetary penalties for each violation of the Clean Water Act at $37,500 per day per violation for violations occurring since 20 April 2012, as permitted by 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4;

d.    A Court order awarding Waterkeeper its reasonable costs of this suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d);

e.    Any other relief as this Court may deem appropriate.

Dated: June 8, 2015                    Respectfully submitted,

                                       LAWYERS FOR CLEAN WATER, INC.


                                       _____/s/ Drevet Hunt_____
                                       Drevet Hunt
                                       Attorney for Plaintiff
                                       Los Angeles Waterkeeper