1  LAWYERS FOR CLEAN WATER, INC.
2  Drevet Hunt (Bar No. 240487)
          Email: drev@lawyersforcleanwater.com
3  Layne Friedrich (Bar No. 195431)
          Email: layne@lawyersforcleanwater.com
4  1004-A O'Reilly Avenue
5  San Francisco, California 94129
   Telephone:  (415) 440-6520
6  Facsimile:  (415) 440-4155
7
   *Attorneys for Plaintiff*
8  LOS ANGELES WATERKEEPER

9
                  **UNITED STATES DISTRICT COURT**
10                **CENTRAL DISTRICT OF CALIFORNIA**

11
   LOS ANGELES WATERKEEPER, a          Civil Case No. 15-cv-04326 MWF-JEM
12 California non-profit corporation,
                                       **PLAINTIFF'S MOTION FOR**
13                                     **DEFAULT JUDGMENT;**
                  Plaintiff,           **MEMORANDUM OF POINTS AND**
14      vs.                            **AUTHORITIES IN SUPPORT**
                                       **THEREOF**
15 A AND A METAL RECYCLING, INC., a
16 California corporation; SINDY CARDONA,  Honorable Judge Michael W. Fitzgerald
   an individual;
17                Defendants.          Hearing Date:  November 16, 2015
18                                     Hearing Time: 10:00 a.m.
                                       Location: Courtroom:  1600, 16th Floor
19
20                                     Fed. R. Civ. Pro. 55(b)(2)
21                                     Civil Local Rule 55-1
22
23
24
25
26
27
28

Motion for Default Judgment              Civil Case No. 15-cv-04326 MWF-JEM

# TABLE OF CONTENTS

Page

I.   INTRODUCTION. ...................................................................................1

II.  LEGAL BACKGROUND .......................................................................1

A. Statutory Basis for Entry of Default Judgment. ...............................1

B. The Clean Water Act. ........................................................................1

C. The California Storm Water Permit. ..................................................2

    1.  Effluent Limitation B(3). ...........................................................2

    2.  Receiving Water Limitation C(2). ..............................................3

    3.  Storm Water Pollution Prevention Plan and Monitoring and Reporting Requirements. ..............................................................4

III. FACTUAL BACKGROUND ...................................................................4

A. Plaintiff's Complaint and Defendants' Failure to Respond. .............4

B. Defendants' Operations and Coverage Under the Storm Water Permit. .....5

C. Defendants' SWPPP and M&RP for the Facility. .............................5

D. Storm Water Discharges from the Facility. .......................................6

IV.  ARGUMENT ...........................................................................................6

A. Second Cause of Action. ....................................................................6

B. Fourth Cause of Action. .....................................................................8

C. Fifth Cause of Action. ........................................................................9

D. Sixth Cause of Action. .....................................................................10

V.   RELIEF REQUESTED ..........................................................................10

A. Declaratory Relief. ...........................................................................10

B. Injunctive Relief. ..............................................................................11

C. Civil Penalties. .................................................................................12

**TABLE OF CONTENTS (continued)**

**Page**

    1.  **Penalties for Clean Water Act Violations.** ....................................12

    2.  **Methods for Calculating Penalties.** .................................13

    3.  **Calculating Penalties for Defendants' Clean Water Act Violations.** .................................14

D. **Partial Reimbursement of Plaintiff's Fees and Costs Incurred.** .................15

    1.  **Plaintiff's Attorney's Fees Are Reasonable and Recoverable.** ...17

       i.  **The Number of Hours Plaintiff's Counsel Expended Is Reasonable.** .................................17

      ii.  **Plaintiff's Counsel's Rates Are Reasonable.** .......................17

    2.  **Plaintiff's Costs Incurred Are Reasonable and Recoverable.** .....18

VI.    **CONCLUSION** .................................19

# **TABLE OF AUTHORITIES**

**Page**

*Atlantic States Legal Found. v. Tyson Foods*
    897 F.2d 1128 (11th Cir. 1990) ................................................................**13, 14, 16**

*Cal. Sportfishing Prot. Alliance v. Callaway*
    2012 U.S. Dist. LEXIS 116719 (E.D. Cal. Aug. 17, 2012) ......................**15, 18**

*Cal. Sportfishing Prot. Alliance v. Callaway*
    2012 U.S. Dist. LEXIS 169072 (E.D. Cal. 2012) ......................................**7**

*Davis v. Mason County*
    927 F.2d 1473 (9th Cir. 1991) ................................................................**17**

*Ecological Rights Found. v. Sierra Pac. Indus., Inc.*
    Case No. C 01-0520 MEJ (N.D. Cal. Oct. 30, 2002) ..............................**7**

*Edwards et al. v. City of Colfax*
    2011 U.S. Dist. LEXIS 17105 (E.D. Cal. Feb. 15, 2011) .........................**17, 18**

*Eitel v. McCool*
    782 F.2d 1470 (9th Cir. 1986) ................................................................**1**

*Friends of the Earth v. Carey*
    535 F.2d 165 (2d Cir. 1976) ....................................................................**16**

*Friends of the Earth v. Laidlaw Envt'l Servs.*
    528 U.S. 167 (2000) ................................................................................**13**

*Gates v. Deukmejian*
    987 F.2d 1392 (9th Cir. 1992) ................................................................**17**

*Geddes v. United Fin. Group*
    559 F.2d 557 (9th Cir. 1977) ..................................................................**1, 7, 8**

*Hensley v. Eckerhart*
    461 U.S. 424 (1983) ................................................................................**17**

*Illinois v. Outboard Marine, Inc.*
    680 F.2d 473 (7th Cir. 1982*)* ..................................................................**13**

## TABLE OF AUTHORITIES (continued)

**Page**

*Keithley v. Homestore.com, Inc.*

    2009 U.S. Dist. LEXIS 2720 (N.D. Cal. Jan. 7, 2009) ........................................**18**

*Leslie Salt Co. v. United States*

    55 F.3d 1388 (9th Cir. 1995) .....................................................................**12**

*Moreno v. Sacramento*

    534 F.3d 1106 (9th Cir. 2008) ..................................................................**17**

*Natural Res. Def. Council v. Southwest Marine, Inc.*

    945 F. Supp. 1330 (S.D. Cal 1996) ...................................................**9, 10, 12**

*Pepsico, Inc. v. Triunfo-Mex, Inc.*

    189 F.R.D. 431 (C.D. Cal. 1999) ...............................................................**1**

*Pope v. United States*

    323 U.S. 1 (1944) ....................................................................................**1**

*Proffitt v. Mun. Auth. of Borough of Morrisville*

    716 F. Supp. 837 (E.D. Pa 1989) ..............................................................**16**

*Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*

    684 F. Supp. 115 (D.N.J. 1988) .........................................................**11, 13**

*Pub. Interest Research Group v. Powell Duffryn Terminals Inc.*

    720 F. Supp. 1158 (D.N.J. 1989) *aff'd in part, rev'd in part on other*

    *grounds*, 913 F.2d 64 (3d Cir. 1990) .................................................**13, 14**

*Public Interest Research Group of N.J. v. Powell Duffryn Terminals Inc.*,

    913 F.2d 64, 79 (3rd Cir. 1990) ...............................................................**14**

*San Francisco Baykeeper v. W. Bay Sanitary Dist.*

    2011 U.S. Dist. LEXIS 138093...............................................................**18**

*Santa Monica Baykeeper v. Kramer*

    619 F. Supp. 2d 914 (C.D. Cal. 2009).................................................**4, 7, 8**

## TABLE OF AUTHORITIES (continued)

**Page**

*Santa Monica Baykeeper v. Sunlite Salvage, Inc.*
  Case No. CV-99-4578 WDK (C.D. Cal. Dec. 22, 1999) ..........................7

*Sierra Club v. Aluminum Co. of Am.*
  585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) .................................13

*Sierra Club v. Chevron U.S.A., Inc.*
  834 F.2d 1517, 1525 (9th Cir. 1987) .....................................16

*Tull v. United States*
  481 U.S. 412, 425 (1987) ..........................................13

*United States v. Key West Towers, Inc.*
  720 F. Supp. 963 (S.D. Fla. 1989) .................................14

*United States v. Municipal Auth. Of Union Township*
  150 F.3d 259 (3rd Cir. 1998) .............................................13

*United States v. Scharringhausen*
  2003 U.S. Dist. LEXIS 23417, at *2 (S.D. Cal. Nov. 4, 2003) .............................1

*United States v. Smithfield Foods, Inc.*
  191 F.3d 516 (4th Cir. 1999) .................................13

*Waterkeepers N. California v. AG Indus. Mfg. Inc.*
  375 F.3d 913, 919 n.5 (9th Cir. 2004) .................................7

**Federal Statutes**

33 U.S.C. § 1311(a) ..........................................................2, 10

33 U.S.C. § 1319(d) ..........................................................12

33 U.S.C. § 1342(a). ..........................................................2

33 U.S.C. § 1365 ..........................................................11

33 U.S.C. § 1365(a) ..........................................................11

33 U.S.C. § 1365(d) ..........................................................16

# TABLE OF AUTHORITIES (continued)

**Page**

**Federal Regulations**

40 C.F.R. § 19.4 ................................................................................................12

40 C.F.R. § 401.15 ..............................................................................................2

40 C.F.R. § 401.16 ..............................................................................................2


**Federal Register**

65 Fed. Reg. at 64,746 (Oct. 30, 2000) ...............................................................3

73 Fed. Reg. 56,572 (Sept. 28, 2008) ..................................................................3


**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 8(b)(6) .............................................................................1, 6, 7, 8

Fed. R. Civ. P. 55(b) ............................................................................................1

Fed. R. Civ. P. 55(b)(2) ........................................................................................1


**State Statutes**

Water Code § 13385(h) ......................................................................................15

## I.      **INTRODUCTION**

Plaintiff Los Angeles Waterkeeper ("Plaintiff") hereby requests that the Court enter default judgment in this matter against defendants A and A Metal Recycling, Inc. and Sindy Cardona ("Defendants") pursuant to Local Rule 55-1 and Federal Rule of Civil Procedure ("Rule") 55(b)(2) of the Federal Rules of Civil Procedure. The Clerk of the above-entitled court entered default against each Defendant on September 9, 2015. *See* ECF Dkt. No. 17.

## II.     **LEGAL BACKGROUND**

### A.      **Statutory Basis for Entry of Default Judgment.**

Rule 55(b) provides this Court authority to enter a default judgment against Defendant. Fed. R. Civ. P. 55(b)(2). District courts are vested with broad discretion in deciding whether to enter a default judgment. *Pepsico, Inc. v. Triunfo-Mex, Inc*., 189 F.R.D. 431, 432 (C.D. Cal. 1999) (listing factors courts consider in exercising discretion under Rule 55); *see also United States v. Scharringhausen*, 2003 U.S. Dist. LEXIS 23417, at *2 (S.D. Cal. Nov. 4, 2003) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); *see also Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)).

### B.      **The Clean Water Act.**

The Complaint sets out, in detail, the legal background and statutory basis for this citizen suit and Defendant's violations of the Clean Water Act.[1] ECF Dkt. No. 1 at ¶¶ 30-100. In particular, section 301(a) of the Clean Water Act prohibits the discharge of any pollutant into waters of the United States not authorized by, or in violation of, the terms

---

[1] Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*

of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant to Section 402 of the Clean Water Act. 33 U.S.C. §§ 1311(a), 1342(a).

### C.     The California Storm Water Permit.

Pursuant to section 402 of the Clean Water Act, in 1992, California issued its NPDES General Permit No. CAS000001 [State Water Resources Control Board] ("Storm Water Permit"), by Water Quality Order No. 92-12-DWQ. The Storm Water Permit was reissued in 1997 by Order No. 97-03-DWQ, and reissued again in April 2014 by Order No. 2014-0057-DWQ. The terms of the most recent 2014 reissuance of the Storm Water Permit took effect on July 2, 2015, and are as stringent, or more stringent, than the 1997 reissuance of the Storm Water Permit. Both the 1997 and 2014 versions of the Storm Water Permit are available at

http://www.waterboards.ca.gov/water_issues/programs/stormwater/docs/induspmt.pdf.[2]

California's Storm Water Permit is a statewide general NPDES permit issued by the State Board pursuant to section 402 of the Clean Water Act. *See* Storm Water Permit, Finding No. 15. In order to discharge storm water lawfully in California, industrial storm water dischargers must secure coverage under the Storm Water Permit and comply with its terms. Violations of the Storm Water Permit are violations of the Clean Water Act. *See* Storm Water Permit, Section C(1).

### 1.     Effluent Limitation B(3).

Effluent Limitation (B)(3) of the Storm Water Permit requires dischargers to reduce or prevent pollutants associated with industrial activity in storm water discharges through the implementation of Best Available Technology Economically Achievable ("BAT") for toxic or non-conventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for conventional pollutants.[3] EPA's NPDES Multi-Sector

---

[2] All citations to the Storm Water Permit are to the 1997 reissuance. Citations to the 2014 reissuance will be noted as "2014 Storm Water Permit."

[3] Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper, lead, and zinc, among others. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological oxygen demand, total suspended solids, oil and grease and pH, among others.

General Permit for Stormwater Discharges Associated With Industrial Activity ("MSGP")[4] sets numeric benchmark levels for pollutant concentrations in storm water discharges ("EPA Benchmark"), which provide an objective standard to determine whether a facility's Best Management Practices ("BMPs") are successfully developed and implemented. *See* ECF Dkt. No 1 at ¶¶ 44-47, 242-244; *see also* 65 Fed. Reg. at 64,746, 64,766-67 (Oct. 30, 2000) (2000 MSGP) ("benchmarks also provide an appropriate level to determine whether a facility's storm water pollution prevention measures are successfully implemented."); *see also* 2008 MSGP at 35, and 2008 MSGP Fact Sheet at 95-106. The Storm Water Permit requires one or more BMPs be developed and implemented for each pollutant and its source. *See* Storm Water Permit, Section A(8); *see also* ECF Dkt. No. 1 at ¶ 76.

## 2.    Receiving Water Limitations C(2).

Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water discharges that "cause or contribute to an exceedance of any applicable water quality standard. Water quality standards ("WQS") are pollutant concentration levels determined by the State Board, the various regional boards, and/or the EPA to be protective of the beneficial uses of the waters that receive polluted discharges. *See* ECF Dkt. No. 1 at ¶¶ 50-51. WQS applicable to dischargers covered by the Storm Water Permit include those set out in the Criteria for Priority Toxic Pollutants for the State of California ("CTR"), which sets numeric criteria set to protect human health and the environment in the state of California.[5] 40 C.F.R. § 131.38; *see* ECF Dkt. No. 1 at ¶ 52; *see also Santa Monica Baykeeper v. Kramer*, 619 F. Supp. 2d 914, 926-27 (C.D. Cal. 2009) ("[T]he CTR is a

---

[4] *United States Environmental Protection Agency (EPA) National Pollutant Discharge Elimination System (NPDES) Multi-Sector General Permit for Stormwater Discharges Associated with Industrial Activity (MSGP) Authorization to Discharge Under the National Pollutant Discharge Elimination System* (2008) (73 Fed. Reg. 56,572) (Sept. 28, 2008), *available at* http://www.epa.gov/npdes/pubs/msgp2008_finalfs.pdf.

[5] Water Quality Standards; Establishment of Numeric Criteria for Priority Toxic Pollutants for the State of California Factsheet, EPA-823-00-008, April 2000 *available at*: http://water.epa.gov/lawsregs/rulesregs/ctr/factsheet.cfm.

water quality standard in the General Permit, Receiving Water Limitation C(2).").

### 3. Storm Water Pollution Prevention Plan and Monitoring and Reporting Requirements.

Section A(1) of the Storm Water Permit requires dischargers to develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") that complies with the requirements of the Storm Water Permit before industrial activities begin. *See* ECF Dkt. No. 1 at ¶ 68.

Section B(1) of the Storm Water Permit requires dischargers to develop and implement a Monitoring and Reporting Program ("M&RP") before industrial activities begin. *See* ECF Dkt. No. 1 at ¶ 81. Section B(14) of the Storm Water Permit requires that the information collected under a dischargers M&RP is to be documented each year in an "Annual Report" that is submitted to the State Board. *See* ECF Dkt. No. 1 at ¶ 97.

## III.   FACTUAL BACKGROUND

### A.   Plaintiff's Complaint and Defendants' Failure to Respond.

Plaintiff filed its complaint on June 8, 2015, which sets forth six (6) well-plead claims alleging that Defendants have and continue to violate the Storm Water Permit and the Clean Water Act. *See* ECF Dkt. No. 1. The Complaint incorporated Plaintiff's Notice of Intent to File Suit letter. *See* ECF Dkt. No. 1 at ¶ 3. Defendants were served with the complaint and related documents on July 17, 2015, and were required to answer or otherwise respond to the complaint on or before August 7, 2015. *See* ECF Dkt. Nos. 10, 11; *see also* Declaration of Drevet Hunt in Support of Motion for Entry of Default Judgment, filed concurrently herewith, ¶ 11 ("Hunt Decl.").

After numerous attempts to communicate to Defendants the need for them to respond to Plaintiff's complaint, and no response forthcoming, Plaintiff filed a request to the clerk to enter default. *See* Hunt Decl., ¶¶ 14-18; *see also* ECF Dkt. Nos. 15 and 16. On September 9, 2015, the clerk entered default against the Defendants. *See* ECF Dkt. No. 17. Thereafter, on September 14, 2015, this Court issued an Order to Show Cause, and set a hearing for "Order To Show Cause Re Default Judgment for October 19, 2015

1    at 11:30 a.m. If a Motion for Default Judgment is filed prior to this hearing, the hearing

2    on the Order To Show Cause will be discharged, and no appearance will be necessary."

3    ECF Dkt. No. 18.

4    **B.   Defendants' Operations and Coverage Under the Storm Water Permit.**

5    The facility site description is set forth in section V(A) of the Complaint. *See* ECF.

6    Dkt. No. 1 at ¶¶ 101-104. Defendants' Notice of Intent to Comply with the Terms of the

7    General Permit to Discharge Storm Water Associated with Industrial Activity ("NOI")

8    for the facility is dated April 20, 2012.[6] *See* Hunt Decl., Exhibit C; *see also* ECF. Dkt.

9    No. 1 at ¶ 105. The NOI identifies the operator of the facility as "Sindy Cardona." ECF

10   Dkt. No. 1 at ¶ 107. The NOI lists the SIC code for the facility as 5093. *Id.* at ¶ 113.

11   **C.   Defendant's SWPPP and M&RP for the Facility.**

12   The Defendants obtained coverage under the Storm Water Permit on April 20,

13   2012. *See* Hunt Decl., Exhibit C at 6. Defendants did not develop a SWPPP prior to

14   conducting industrial operations. *See* ECF Dkt. No. 1 at ¶¶ 157-159; *see also* Hunt Decl.,

15   Exhibit D at 15 and Exhibit E at 26 (excerpts of Defendants' 2011/2012 and 2012/2013

16   Annual Reports admitting no SWPPP; unaware of the permit's requirements). Plaintiff

17   sent a Public Records Act request ("PRA") to the Regional Board on March 4, 2014

18   requesting the Defendant's SWPPP and M&RP, and Annual Reports. *See* Hunt Decl.,

19   Exhibit A. On April 2, 2014 the Regional Board sent Sindy Cardona a letter for the

20   documents requested in Plaintiff's PRA. *See* Hunt Decl.*, Exhibit B at 4. In response,

21   Defendants sent the Regional Board a copy of the facility's SWPPP and M&RP, which is

22   dated June 11, 2014 ("SWPPP and M&RP"). *See* Hunt Decl., at Exhibit F (excerpts). Via

23   its PRA, Plaintiff also received the 2011/2012, 2012/2013, and 2013/2014 Annual

24   Reports. ECF Dkt. No. 1 at ¶¶ 212-217; *see also* Hunt Decl., Exhibits D and E.

25

26

---

27   [6] Defendant's public records submitted pursuant to the Storm Water Permit can be found in California's
     State Water Resources Control Board's electronic database, called the Storm Water Multiple
28   Application & Report Tracking System ("SMARTS"), available at http://smarts.waterboards.ca.gov/.

**D.    Storm Water Discharges from the Facility.**

Defendants did not collect any samples of storm water discharges at the facility. *See* ECF Dkt. No. 1 at ¶ 218; *see also* Hunt Decl., Exhibits D and E. Waterkeeper collected samples of storm water discharges at the facility on January 24, 2013; March 8, 2013; February 27, 2014; December 2, 2014, and; December 12, 2014. *See* ECF Dkt. No. 1 at ¶¶ 147-151.

Waterkeeper's samples of storm water discharges collected at the facility contain levels of pollutants in excess of EPA Benchmark. *See* ECF Dkt. No. 1 at ¶ 152 (identifying specific storm water samples with TSS, SC, O&G, COD, pH, iron, copper, zinc, magnesium, aluminum, lead, cadmium, mercury, and silver concentrations above EPA Benchmarks).

Waterkeeper's samples of storm water discharges collected at the facility contain levels of pollutants in excess of WQS. *See* ECF Dkt. No. 1 at ¶ 155 (identifying specific storm water samples with copper, lead, zinc, mercury, and cadmium concentrations above WQS).

**IV.    ARGUMENTS**

Although the Defendants are deemed to have admitted each and every allegation in the Complaint (*see* Fed. R. Civ. P. 8(b)(6)), Plaintiff is limiting this motion to issues and violations that are based solely on indisputable evidence and publically available documents that the Defendants have generated. Plaintiff therefore seeks default judgment on its second, fourth, fifth and sixth causes of action, but in no way concedes that each cause of action is not well-plead and properly before the court.

**A.    Second Cause of Action.**

Although Defendants have never collected a storm water sample, each sample that Waterkeeper collected demonstrates that Defendants failed and continue to fail to develop and implement BMPs to reduce or prevent pollutants associated with industrial activities in the facility discharges to levels that are below EPA Benchmarks. *See* ECF

Dkt. No. 1 at ¶¶ 147-154; *see also* ECF Dkt. No. 1-1 at pp. 9-11 (tables compiling results of samples of storm water discharges from the facility).

Plaintiff alleges that discharges of storm water containing pollutants above EPA Benchmarks indicate that BMPs have not been developed or implemented to achieve compliance with BAT/BCT, and that this occurs each time storm water discharges from facility. *See* ECF Dkt. No. 1 at ¶¶ 47, 154, 244. Allegations in well-plead complaints are deemed admitted unless denied in a timely responsive pleading. *See* Fed. R. Civ. P. 8(b)(6); *see also United Fin. Group*, 559 F.2d at 560.

For over 15 years district courts in California have applied EPA Benchmark as an objective basis for evaluating the adequacy of a permittees BMPs. *See, e.g.*, *Santa Monica Baykeeper v. Sunlite Salvage, Inc.*, Case No. CV-99-4578 WDK (C.D. Cal. Dec. 22, 1999), Hunt Decl., Exhibit H at 38:12-14, 40:6-10 (Storm Water Permit violations found when pollutant concentrations in storm water discharges are above EPA Benchmarks); *Ecological Rights Found. v. Sierra Pac. Indus., Inc*., Case No. C 01-0520 MEJ (N.D. Cal. Oct. 30, 2002), Hunt Decl., Exhibit I at 87:26-88:1, 89:16-90:18 (summary judgment for violations of Storm Water Permit granted where sample results document pollution concentrations above EPA Benchmarks); *Waterkeepers N. California v. AG Indus. Mfg. Inc.*, 375 F.3d 913, 919 n.5 (9th Cir. 2004); *Kramer*, 619 F. Supp. 2d at 924-25; *Cal. Sportfishing Prot. Alliance v. Callaway*, 2012 U.S. Dist. LEXIS 169072, at *9 (E.D. Cal. 2012) (finding that defendant failed to develop and implement BAT/BCT based on pollutant levels in defendant's storm water discharges in excess of EPA Benchmarks).

Plaintiff's well-plead allegations establish that concentrations of specific pollutants in storm water discharges from Defendants' facility exceed EPA Benchmarks (*see* ECF Dkt. No. 1 at ¶ 152), and that Defendants have not implemented BMPs that reduce or prevent pollutants in their discharges to levels that meet BAT/BCT standards as required (*id.* at ¶ 153). Plaintiff alleges that Effluent Limitation (B)(3) is violated each and every time contaminated storm water discharges from the facility due to Defendants failure to

Motion for Default Judgment                    Civil Case No. 15-cv-04326 MWF-JEM

develop or implement BMPs that achieve BAT for toxic pollutants and/or BCT for conventional pollutants. S*ee id*. at ¶¶ 245-47. Accordingly, although Plaintiff alleges Defendants violate Effluent Limitation B(3) each and every time they discharge storm water, through this motion Plaintiff only requests the Court find the Defendants liable on the occasions for which sampling data demonstrates an identified pollutant exceeding the EPA Benchmark indicating that BMPs were inadequate to reduce or eliminate that specific pollutant in the facility's storm water discharge. Thus, Plaintiff seeks default judgment on its Second Cause of Action for violations of Effluent Limitation B(3) on forty (40) occasions. *See* ECF Dkt. No. 1 at ¶ 152; *see also* ECF Dkt. No. 1-1 at pp. 9-11.

### B.   Fourth Cause of Action.

Sampling data demonstrates that Defendants discharge storm water containing pollutants that exceed WQS. *See* ECF Dkt. No. 1 at ¶¶ 147-151, 155; *see also* ECF Dkt. No. 1-1 at pp. 11-12. Plaintiff alleges that discharges of storm water containing levels of pollutants that cause or contribute to exceedances of WQS occurs each time storm water discharges from facility. *See* ECF Dkt. No. 1 at ¶¶ 261-264. Allegations not denied are taken as true. *See* Fed. R. Civ. P. 8(b)(6); *see also United Fin. Group*, 559 F.2d at 560. Discharges of pollutants above the CTR is an exceedance of an applicable WQS, and thus a violation of Receiving Water Limitation C(2). *See* ECF Dkt. No. 1 at ¶ 63; *see also Kramer*, 619 F. Supp. 2d at 926-29 (liability established when sample results demonstrated exceedances of applicable water quality standards). Accordingly, Defendants are in violation of Receiving Water Limitation C(2) each time storm water discharges from the facility.

While the well-plead facts establish Defendants are liable for violating Receiving Water Limitation C(2) each time they discharge, by this motion, Plaintiffs only request that the Court find Defendants liable for violating Receiving Water Limitation C(2) on dates for which sampling data demonstrates discharges contain specific pollutants above CTR. Thus, Plaintiff seeks judgment on its Fourth Cause of Action for violations of

Receiving Water Limitation C(2) on nineteen (19) occasions. *See* ECF Dkt. No. 1 at ¶ 155; *see also* ECF Dkt. No. 1-1 at pp.11-12.

      **C.   Fifth Cause Of Action.**

      Section A(1) of the Storm Water Permit requires dischargers to develop and implement a SWPPP before beginning industrial activities. *See* ECF Dkt. No. 1 at ¶ 68; *see also* Storm Water Permit, Attachment 3, Section VII, "[a]s a permit holder you are required to have an SWPPP and Monitoring Program in place prior to the beginning of facility operations." Defendants obtained coverage under the Storm Water Permit on April 20, 2012. *See* Hunt Decl., Exhibit C at 6; *see also* ECF Dkt. No. 1 at ¶ 105. Defendants did not develop a SWPPP until at best June 11, 2014.[7] *See* Hunt Decl., Exhibit F at 32; *id*. at Exhibit D at 15 and Exhibit E at 26 (Excerpts of Defendants 2011/2012 Annual Report and 2012/2013 Annual Report acknowledging that "we do not have a SWPPP."); *see also* ECF Dkt. No. 1 at ¶ 159. Thus, the Defendants operated the facility without a SWPPP from at least April 20, 2012 to June 11, 2014, or for at least 782 days. Each day Defendants operated without a SWPPP is a separate and distinct violation of the Clean Water Act. *See Natural Res. Def. Council v. Southwest Marine, Inc.,* 945 F. Supp. 1330, 1333 (S.D. Cal 1996) (when a permittee "operates without a legally adequate…SWPPP…the violations will continue each and every day.").

      Defendants violated the requirement to develop a SWPPP when industrial activities begin for 782 days. Thus, Plaintiff seeks default judgment for 782 violations of Section A of the Storm Water Permit.

//

//

//

//

---

[7] Plaintiff notes it is "at best" that the SWPPP was developed by June 11, 2014, because the 2012/2013 Annual Report is signed August 8, 2014 by defendant Ms. Cardona and still states "we do not have a SWPPP." *See* Hunt Decl., Exhibit D.

Motion for Default Judgment            Civil Case No. 15-cv-04326 MWF-JEM

9

### D.    Sixth Cause Of Action.

Section B(1) of the Storm Water Permit requires dischargers to develop and implement a M&RP before beginning industrial activities. *See* ECF Dkt. No. 1 at ¶ 81; *see also* Storm Water Permit, Attachment 3, Section VII, "[a]s a permit holder you are required to have an SWPPP and Monitoring Program in place prior to the beginning of facility operations." The Defendants obtained coverage under the Storm Water Permit on April 20, 2012. *See* Hunt Decl., Exhibit C at 6; *see also* ECF Dkt. No. 1 at ¶ 105. Defendants did not develop a M&RP until at best June 11, 2014. *See* Hunt Decl., Exhibit D at 15 and Exhibit E at 26 (Excerpts of Defendants 2011/2012 and 2012/2013 Annual Reports acknowledging that "we were unaware of the requirements of the permit."); *see also id.* at Exhibit F at 32; *see also* ECF Dkt. No. 1 at ¶ 207.

In fact, as documented in the Annual Reports, the Defendants acknowledge that they did not perform any of the required monitoring or reporting. *Id.* at Exhibits D and E. Thus, the Defendants operated the facility without a M&RP from at least April 20, 2012 to June 11, 2014, or at least 782 days. Each day Defendants operated without a M&RP is a separate and distinct violation of the Clean Water Act. *See Southwest Marine, Inc.,* 945 F. Supp. at 1333 (operating without an adequate plan required by the permit is a daily violation).

Defendants violated the requirement to have a M&RP when industrial activities begin for 782 days. Thus, Plaintiff seeks default judgment for 782 violations of Section B of the Storm Water Permit.

## V.    RELIEF REQUESTED

To remedy the above-described violations of the Clean Water Act and the Storm Water Permit, which are based on Plaintiff's well-pleaded, undisputed allegations, Plaintiff respectfully requests that the Court grant the following relief:

### A.    Declaratory Relief.

Plaintiff's request a Court order declaring Defendants to have violated and to be in violation of the Storm Water Permit and Section 301(a) of the CWA, 33 U.S.C.

---

Motion for Default Judgment                    Civil Case No. 15-cv-04326 MWF-JEM

1  § 1311(a), for their violations of the substantive and procedural requirements of the

2  Storm Water Permit, which are described in detail herein.

3      **B.    Injunctive Relief.**

4      Plaintiff's action for injunctive relief under the Clean Water Act is authorized by

5  33 U.S.C. § 1365(a). Although the Storm Water Permit, which was first issued in 1992

6  and reissued in 1997 has been reissued in 2014, all of the provisions being enforced in

7  this action have remained unchanged in the 2014 Permit, and thus injunctive relief is

8  warranted. Injunctive relief for ongoing violations that are in both an expired permit and

9  a reissued permit is authorized by the Clean Water Act and applicable caselaw. *See* 33

10  U.S.C. § 1365; *Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F.

11  Supp. 115, 121-22 (D.N.J. 1988) ("Limitations of an expired permit, when those

12  limitations have been transferred unchanged to the newly issued permit, may be viewed

13  as currently in effect…[and] … those limitations which span both an expired permit and a

14  current one may properly be enforced by an injunctive order").

15      Here the Effluent Limitation and Receiving Water Limitation that Defendants are

16  in violation of are the same in both the Storm Water Permit and the 2014 Storm Water

17  Permit. Specifically, Effluent Limitation (B)(3) of the Storm Water Permit requires

18  dischargers to "reduce or prevent pollutants associated with industrial activity in storm

19  water discharges and authorized non-storm water discharges through the implementation

20  of BAT for toxic or non-conventional pollutants and BCT for conventional pollutants."

21  The 2014 Storm Water Permit contains this same requirement at Effluent Limitation

22  V(A), which states, "[d]ischargers shall implement BMPs that comply with the

23  BAT/BCT requirements of this General Permit to reduce or prevent discharges of

24  pollutants in their storm water discharge in a manner that reflects best industry practice

25  considering technological availability and economic practicability and achievability."

26      Receiving Water Limitation C(2) of the Storm Water Permit prohibits storm water

27  discharges that "cause or contribute to an exceedance of any applicable water quality

28  standard in a Statewide Water Quality Control Plan or the applicable Regional Board's

Motion for Default Judgment                    Civil Case No. 15-cv-04326 MWF-JEM

Basin Plan." The 2014 Storm Water Permit contains this same requirement at Receiving Water Limitation VI(A), which states, "[d]ischargers shall ensure that industrial storm water discharges and authorized NSWDs do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water." Thus, injunctive relief requiring compliance with the requirement to achieve BAT/BCT and with WQS is appropriate.

Because continuing commission of the acts and omissions alleged herein would irreparably harm Plaintiff and its members, for which harm Plaintiff has no plain, speedy, or adequate remedy at law, Plaintiff requests the Court enter injunctive relief requiring Defendants' compliance with the Storm Water Permit's Effluent Limitation (B)(3) and Receiving Water Limitation (C)(2), which have been continued in the 2014 Permit as Effluent Limitation V(A) and VI(A), respectively, as set forth above.

### C.    Civil Penalties.

Pursuant to sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4, by committing the acts and omissions alleged above, Defendants are subject to an assessment of civil penalties up to $37,500 per day per violation for each and every violation of the Clean Water Act.

### 1.    Penalties for Clean Water Act Violations.

Penalties are mandatory once liability for violations of the Clean Water Act has been established. *See Leslie Salt Co. v. United States*, 55 F.3d 1388, 1397 (9th Cir. 1995); *see also Southwest Marine, Inc.* 236 F.3d at 1001. The court has discretion in setting the penalty amount after considering the statutory factors, which include (1) the seriousness of the violations, (2) the economic benefit resulting from the violation, (3) defendant's history of violations, (4) good faith efforts to comply with the applicable requirements, (5) the economic impact of the penalty on the violator, and (6) such other matters as justice may require. *See* 33 U.S.C. § 1319(d); *see also Southwest Marine*, 236 F.3d at 1001-1002. The penalty must be large enough to deter future violations, and thus do not just become a cost of doing business. *See Friends of the Earth v. Laidlaw Env't'l Servs.*,

528 U.S. 167, 185 (2000); *see also Pub. Interest Research Group v. Powell Duffryn Terminals Inc.*, 720 F. Supp. 1158, 1166 (D.N.J. 1989) *aff'd in part, rev'd in part on other grounds*, 913 F.2d 64 (3d Cir. 1990) ("the amount of the civil penalty must be high enough to insure that polluters cannot simply absorb the penalty as a cost of doing business."); *see also Tull v. United States*, 481 U.S. 412, 425 (1987) ("Penalties assessed by the judges should be sufficiently higher than penalties to which the Agency would have agreed to in settlement to encourage violators to settle.") (quoting 123 Cong. Rec. 39,190-39, 191 (1977)).

The fact that the Defendants' violations are of an expired permit does not allow them to escape penalties for their violations. *See Illinois v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th Cir. 1982*)* (Court permitted a grant of relief for violations of an expired permit); *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative intent and public policy favor allowing penalties for violations of an expired permit); *see also Carter-Wallace, Inc.,* 684 F. Supp. 121-22.

## 2.    Methods for Calculating Penalties.

There are two methods courts utilize when calculating penalties, either the "top-down method" or the "bottom-up method." *See United States v. Municipal Auth. Of Union Township*, 150 F.3d 259, 265 (3rd Cir. 1998) (courts have discretion as to which method to employ). In the top-down method, courts begin their penalty calculation at the statutory maximum and then only adjust downward as warranted by consideration of the Clean Water Act's section 309(d) factors. *See Atlantic States Legal Found. v. Tyson Foods*, 897 F.2d 1128, 1142 (11th Cir. 1990). In the bottom-up method, courts either begin the calculation at zero, or at the sum equal to defendants' economic benefit of non-compliance and adjust the civil penalty upward as warranted by considering the section 309(d) factors. *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 528-29 (4th Cir. 1999).

The first 309(d) factor is seriousness of the violations. Proof of actual harm is not

1  required. *Public Interest Research Group of N.J. v. Powell Duffryn Terminals Inc.*, 913

2  F.2d 64, 79 (3rd Cir. 1990) (*Powell Duffryn Terminals II*). The second factor is the

3  economic impact the penalty will have and defendant's ability to pay. The burden is on

4  the defendant to demonstrate that any reduction in its civil penalty should be calculated

5  because of the penalty's economic impact on the defendant. *See Powell Duffryn*

6  *Terminals, Inc.*, 720 F. Supp. at 1166 (reasoning that defendant had not supported its

7  argument that it was in a relatively poor economic position). The third penalty

8  consideration is the defendant's good faith efforts to comply. While good faith efforts at

9  complying may lower the penalty, a lack of such efforts to comply, or affirmative

10 recalcitrance in violating the Clean Water Act favors increasing penalties. *See United*

11 *States v. Key West Towers, Inc.*, 720 F. Supp. 963, 965-66 (S.D. Fla. 1989). The fourth

12 penalty factor is the defendant's prior history of violations, which if substantial weighs in

13 favor of increasing the civil penalty. *See Powell Duffryn Terminals Inc.*, 720 F. Supp. at

14 1163 (finding an 11 year history of violations).

15        **3.**    **Calculating Penalties for Defendants' Clean Water Act Violations.**

16      As to the amount of penalties appropriate here, given the lack of evidence resulting

17 from Defendants refusal to respond to this case, and evidence demonstrating a lack of

18 willingness to comply with the Storm Water Permit the top-down method should be

19 utilized, and a substantial penalty to deter future violations should be imposed. *See, e.g.,*

20 *Tyson Foods*, 897 F.2d at 1137-40. With respect to the seriousness of the violations,

21 Plaintiff's complaint alleges six claims against the Defendants including discharging

22 storm water containing levels of pollutants that violate water quality standards set to

23 protect human health and the environment. The violations set out in Plaintiff's complaint

24 are serious. With respect to the 2nd and 3rd penalty factors—economic benefit from non-

25 compliance and economic impact of penalty assessment—Plaintiff has no specific

26 information as to either factor. However, by failing to develop and implement a SWPPP

27 for several years, and failing to take any demonstrable measures to achieve compliance

28 with the Permit, it is reasonable to infer that Defendants have realized some economic

benefit. Finally, with respect to Defendants' history of violations and good faith efforts to comply, Defendants began operations without obtaining Storm Water Permit coverage, and even when they did file for coverage, they continued operations without complying with the basic requirements such as drafting pollution plans, or collecting samples, claiming they were "unaware" of the permit's requirements. *See* Hunt Decl., Exhibit D at 15 and Exhibit E at 26.

In a case directly on point, the court awarded $2,925,000.00 in penalties on a motion for default judgment for only 810 violations of the Storm Water Permit. *Cal. Sportfishing Prot. Alliance v. Callaway*, 2012 U.S. Dist. LEXIS 116719, at *5 n.3 (E.D. Cal. Aug. 17, 2012) (report and recommendation adopted in full at 2012 U.S. Dist. LEXIS 146598, at *1-2 (E.D. Cal. Oct. 10, 2012). Here, as in *Callaway*, the court has no evidence regarding good faith efforts to comply, the economic impact of the penalty on Defendants, or any other evidence favoring a reduction of the penalty because the Defendants have failed to respond to the complaint. Thus there is no evidence the penalties should be adjusted downward. *See Callaway*, 2012 U.S. Dist. LEXIS 116719, at *4.

Thus, based on the seriousness of the violations, including Defendants failure to even obtain permit coverage, Plaintiff requests that based on the 1,623 violations (40 for second cause of action, 19 for fourth cause of action, 782 for the fifth and sixth causes of action respectively), the Court assess $3,000[8] per violation for a total of $4,869,000.00 in civil penalties.

### D.   Partial Reimbursement of Plaintiff's Fees and Costs Incurred.

Plaintiff requests partial reimbursement of its litigation fees and costs incurred in filing its citizen enforcement action pursuant to section 505(d) of the Clean Water Act,

---

[8] While Plaintiff believes a higher base amount may be warranted, there is a lack of information for the Clean Water Act penalty factors due to Defendants' failure to respond to the complaint, Plaintiff therefore looks to the mandatory <u>minimum</u> penalty amount used for serious violations of California's state water quality code, which is $3,000 per violation. *See* Water Code § 13385(h).

which authorizes the reimbursement of litigation fees and costs to prevailing or substantially prevailing parties. 33 U.S.C. § 1365(d). Section 505(d) provides:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d).

Further, it is "Congress' clear intention … that citizen plaintiffs are not to be treated as 'nuisances or troublemakers' but rather as 'welcomed participants in the vindication of environmental interests.'" *Proffitt v. Mun. Auth. of Borough of Morrisville*, 716 F. Supp. 837, 844 (E.D. Pa 1989) (quoting *Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976)); *see also Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (underscoring that citizen suits perform important public function); *Tyson Foods, Inc.*, 897 F.2d at 1136 ("citizen suits are an important supplement to government enforcement of the Clean Water Act, given that the government has only limited resources to bring its own enforcement actions").

Local Rule 55-3 sets out a formula applicable to the recovery of reasonable attorneys' fees in default judgment motions when the underlying statute authorizes such a recovery. Where the amount of judgment is over $100,000 as is requested here, a party can recover $5,600 plus 2% of the amount over $100,000. The amount is exclusive of costs. *Id*. Using this formula Plaintiff's fee recovery would be $100,980 ($5600 plus 2 % of $4,869,000 penalty less the $100,000, which is $95,380, for a total of $100,980). Plaintiff has only incurred $38,783.50 in fees, and $4,132.54 in costs in investigating Defendants industrial operations and non-compliance with the Clean Water Act, initiating the citizen enforcement, and research and writing this motion and other litigation-related documents. *See* Hunt Decl., ¶¶ 5-21, Exhibit J at 104; *see also* Declaration of Layne Friedrich in Support of Motion for Entry of Default Judgment, filed concurrently herewith ("Friedrich Decl."), Exhibit A. Because Plaintiff has incurred fewer fees than are allowed under the formula set forth in Local Rule 55-3, and because the Clean Water

Act expressly provides for recovery of fees and costs by prevailing parties, Plaintiff seeks the actual amounts incurred, as set out below, and in the Hunt and Friedrich declarations.

### 1.   Plaintiff's Attorneys' Fees Are Reasonable and Recoverable.

A party entitled to recover attorneys' fees under the Clean Water Act may recover all reasonable fees, which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

### i.   The Number of Hours Plaintiff's Counsel Expended Is Reasonable.

The number of hours spent on this action is reasonable. It reflects years of investigating the facility and its impacts on local waterways, time and resources spent obtaining and reviewing information necessary to initiate this enforcement action, and time and expenses incurred drafting the notice letter and complaint. *See* Hunt Decl., ¶¶ 5-23 and Exhibit J; Friedrich Decl., Exhibit A.

### ii.   Plaintiff's Counsel's Rates Are Reasonable.

Here, San Francisco bay area billing rates are appropriately applied to the attorney hours incurred in this matter, rather than Los Angeles rates, to the extent that there is a discrepancy between the two locales. A district court usually looks to the local forum when determining reasonable billing rates. *See Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). But courts can award reasonable rates for attorneys based on the attorney's forum, rather than where the court sits. *See Edwards et al. v. City of Colfax*, 2011 U.S. Dist. LEXIS 17105, at *22-23 (E.D. Cal. Feb. 15, 2011) (awarding attorneys in this action San Francisco rates for work performed in Sacramento); *see also Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (San Francisco rates awarded in Eastern District of California).

In determining the reasonableness of an attorney's fee, courts also consider the "experience held by counsel." *Moreno v. Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). The requested rates are based on the experience of the attorneys, specializing in

1  Clean Water Act litigation, and are comparable to what similarly experienced attorneys

2  rates are in the San Francisco Bay area. *See* Hunt Decl., ¶¶ 31-33; Friedrich Decl., ¶¶ 4-8;

3  *see also San Francisco Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS

4  138093, at *20-26 (N.D. Cal. Dec. 1, 2011). The rates Plaintiff's counsel seeks have been

5  found to be reasonable and awarded by both the Northern and the Eastern Districts in

6  Clean Water Act citizen enforcement actions. *See San Francisco Baykeeper v. W. Bay*

7  *Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093, at *26; *see also Edwards v. City of*

8  *Colfax*, 2011 U.S. Dist. LEXIS 17105, at *24-25. Specifically, in *West Bay*, the Court

9  ruled that the rates billed for attorneys at Lawyers for Clean Water, Inc. are "reasonable,

10  given the experience of the attorneys and the rate's consistency with prevailing rates of

11  other San Francisco attorneys who specialize in public interest environmental litigation."

12  *W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093, at *26. Plaintiff's counsel here

13  has litigated throughout California and recovers its San Francisco Bay area rates through

14  settlement of other Clean Water Act citizen enforcement actions, including in cases

15  representing Los Angeles Waterkeeper. *See* Hunt Decl., ¶¶ 24-32; Friedrich Decl., at ¶¶

16  4-11. Finally, here the requested amount and rates are similar to those awarded in

17  *Callaway. Callaway*, 2012 U.S. Dist. LEXIS 116719, at *5.

18      Plaintiff retained counsel in San Francisco with demonstrated experience

19  successfully enforcing the Clean Water Act on behalf of citizens throughout California.

20  The requested San Francisco rates are reasonable and should be applied to the hours

21  sought which were reasonably incurred. Specifically, Plaintiff's counsel's loadstar based

22  on the reasonable number of hours expended times counsel's reasonable rates is

23  $38,783.50.

24      **2.     Plaintiff's Costs Incurred Are Reasonable and Recoverable.**

25      In addition to its attorneys' fees, a citizen plaintiff can recover reasonable

26  expenses. *See Keithley v. Homestore.com, Inc.*, 2009 U.S. Dist. LEXIS 2720, at *28

27  (N.D. Cal. Jan. 7, 2009).

28      In bringing this citizen enforcement action, Plaintiff has incurred $4,132.54 in

costs. Hunt Decl., Exhibit L. These costs are the type of expenses reasonably incurred in litigation, and are recoverable.

In sum, Plaintiff seeks to recover $38,783.50 in fees and $4,132.54 costs for a total of $42,916.04.

## VI. CONCLUSION

Plaintiff's complaint included well-pleaded and factually supported claims, to which Defendants failed to respond. The allegations are therefore deemed admitted and entry of a default judgment is appropriate. Plaintiff requests that the court enter judgment as set forth in the [Proposed] Order Entering Default Judgment filed concurrently herewith.


Dated: October 14, 2015                    Respectfully submitted,

                                           LAWYERS FOR CLEAN WATER, INC.


                                           _____/s/ Drevet Hunt_____
                                           Drevet Hunt
                                           Attorney for Plaintiff
                                           Los Angeles Waterkeeper